# Exhibit A

## Part II

114.    The representations set forth in Paragraph 112 are false or misleading and constitute a deceptive act or practice in violation of Sections 807 and 807(10) of the FDCPA, 15 U.S.C. § 1692e, 1692e(10).

## V.

### Conduct Provisions

**IT IS ORDERED, under Sections 1053 and 1055 of the CFPA, that:**

115.    Respondent and its officers, agents, servants, employees, and attorneys who have actual notice of this Consent Order, whether acting directly or indirectly, may not violate Sections 1031(a) and 1036(a)(1) of the CFPA, 12 U.S.C. §§ 5531(a) and 5536(a)(1); and  Sections 807, 807(2)(A), 807(5), and 807(10) of the FDCPA, 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692(5), 1692(8), and 1692(10).

## VI.

### PROHIBITION AGAINST COLLECTING DEBTS WITHOUT A REASONABLE BASIS

**IT IS FURTHER ORDERED** that Respondent, Respondent's officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Consent Order, whether acting directly or indirectly, are permanently restrained and prohibited from:

116.    Making any representation, expressly or by implication, that a Consumer owes a Debt to Respondent or as to the amount of a Debt unless, at the time of making the representation, Respondent can substantiate the representation. Without limiting the

foregoing, such substantiation must include reviewing Original Account-Level Documentation reflecting the Consumer's name and the claimed amount excluding any post Charge-off or post-judgment payments (unless the claimed amount is higher than the Charge-off Balance or judgment balance, in which case Respondent must review (i) Original Account-Level Documentation reflecting the Charge-Off Balance or judgment balance and (ii) an explanation of how the claimed amount was calculated and why such increase in authorized by the agreement creating the Debt or permitted by law) under any of the following circumstances:

      a. The Consumer disputed orally or in writing, the accuracy or validity of the Debt:

      b. The Debt was purchased, after the Effective Date, through a purchase agreement without meaningful and effective representations and warranties as to the accuracy or validity of the Debt;

      c. The Debt was purchased, after the Effective Date, through a purchase agreement without meaningful and effective commitments to provide Original Account-Level Documentation during the time period in which Respondent is collecting the Debt;

      d. The Debt was purchased in a Portfolio, after the Effective Date, which Respondent knows includes unsupported or materially inaccurate information about any Debt, based on either of the following factors:

i.  At any time during the preceding twelve months, a Consumer disputed, orally or in writing, the accuracy or validity of a Debt in the Portfolio and Respondent sought but was unable to obtain Original Account-Level Documentation reflecting the amount of the Debt or the identity of the person responsible for the Debt, unless (i) Respondent can establish, based on a documented and thorough review of Original Account-Level Documentation concerning a sample of other Debts in the Portfolio, that the inability to obtain Original Account-Level Documentation to support the Debt in the Portfolio was an anomaly; or (ii) the inability to obtain Account-Level Documentation reflecting the amount of the Debt was caused by a documented balance adjustment made by a Creditor after Respondent acquired the Portfolio containing the Debt (for example, balance adjustments caused by a Creditor's audit or restitution);

ii.  Original Account-Level Documentation produced to Respondent, by a Seller or a Consumer, reflected information about the amount of the Debt or the identity of the person responsible for the Debt that was inconsistent and irreconcilable with information previously provided to

Respondent by the seller, unless (i) Respondent can establish, based on a documented and thorough review of Original Account-Level Documentation concerning a sample of other Debts in the Portfolio, that the production of inaccurate or inconsistent information concerning the Debt in the Portfolio was an anomaly; or (ii) the inconsistency was caused by a documented balance adjustment made by a Creditor after Respondent acquired the Portfolio containing the Debt (for example, balance adjustments caused by a Creditor's audit or restitution).

117.    Notwithstanding the foregoing, Respondent is not required pursuant to this Paragraph to (i) refuse to accept any payments voluntarily submitted by Consumers; (ii) suspend collections for Consumers who have acknowledged the Debt and agreed to make payments; or (iii) refuse to communicate with a Consumer who affirmatively contacts Respondent (or Respondent's agents) or requests contact from Respondent (or Respondent's agents) to discuss the Consumer's Debt.

# VII.

## PROHIBITION AGAINST SELLING DEBT

**IT IS FURTHER ORDERED** that Respondent, Respondent's officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and prohibited from:

118.    Reselling Debt to anyone other than (i) the entity that initially sold the Debt to Respondent or to the Creditor; (ii) to a subsidiary or affiliate of Respondent that is subject to the terms of this Consent Order (either by operation of law or by agreement); (iii) to any entity that is subject to the terms of this Consent Order as part of an acquisition or merger with Respondent, or purchase of all or substantially all of Respondent's assets; or (iv) Respondent's (or its affiliates') creditors or any agent of such creditors (in each case, solely in their capacity as such) in settlement or satisfaction of any claims under, or in connection with the default or remedial provisions of, any relevant loan or lending agreement.

# VIII.

## PROHIBITION AGAINST THREATENING OR FILING COLLECTION LAWSUITS WITHOUT AN INTENT TO PROVE THE DEBT, IF CONTESTED

**IT IS FURTHER ORDERED** that Respondent, Respondent's officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Consent Order, whether acting directly or indirectly, are permanently restrained and prohibited from:

119. Initiating any Debt Collection Lawsuit unless in possession of the following:

   a. Original Account-Level Documentation reflecting, at a minimum, the Consumer's name, the last four digits of the account number associated with the Debt at the time of Charge-off, the claimed amount excluding any post Charge-off payments (unless the claimed amount is higher than the Charge-off Balance or judgement balance, in which case Respondent must possess (i) Original Account-Level Documentation reflecting the Charge-off Balance and (ii) an explanation of how the claimed amount was calculated and why such increase is authorized by the agreement creating the Debt or permitted by law), and, if Respondent is suing under a breach of contract theory, the contractual terms and conditions applicable to the Debt;

   b. A chronological listing of the names of all prior owners of the Debt and the date of each transfer of ownership of the Debt, beginning with the name of the Creditor at the time of Charge-off;

   c. A certified or other properly authenticated copy of each bill of sale or other document evidencing the transfer of ownership of the Debt at the time of Charge-off to each successive owner, including Respondent. Each of the bills of sale or other documents evidencing the transfer of ownership of the Debt must include a specific reference to the particular Debt being collected upon, which can be done by referencing an exhibit

attached to each bill of sale or other document transferring ownership of the Debt that is represented or warranted by a Seller to be a list all Debts acquired in that Portfolio; and

d.     Any one of the following:

       i.    A document signed by the Consumer evidencing the opening of the account forming the basis for the Debt; or

      ii.    Original Account-Level Documentation reflecting a purchase, payment, or other actual use of account by the Consumer.

120.    Engaging in any Legal Collection without providing the Consumer with certain information about the Debt, unless previously provided, including but not limited to, the following information:

a. the name of the Creditor at the time of Charge-off, including the name under which that Creditor did business with the Consumer;

b. the last four digits of the account number associated with the Debt at the time of Consumer's last monthly account statement, or if not available, at the time of Charge-off;

c. the Charge-off Balance;

d. Respondent's method of calculating any amount claimed in excess of the Charge-off Balance; and

e.  a statement that the Consumer may request, in writing, copies of the
documentation referenced in Paragraph 119 and Respondent or Respondent's
agent will, within 30 days of such request, provide the documentation at no
cost.

## IX.

## PROHIBITION AGAINST FILING FALSE OR MISLEADING AFFIDAVITS

**IT IS FURTHER ORDERED** that in connection with any lawsuit to collect a Debt,
Respondent, Respondent's officers, agents, servants, employees, and attorneys, and all
other persons in active concert or participation with any of them, who receive actual
notice of this Consent Order, whether acting directly or indirectly, are permanently
restrained and prohibited from:

121.  Submitting any Affidavit:

a.  In which the affiant represents, expressly or by implication, that the
Affidavit has been notarized if the Affidavit was not executed in the
presence of a notary;

b.  Containing an inaccurate statement, including but not limited to a
statement that attached documentation relates to the specific Consumer
being sued when that is not the case;

c. In which the affiant represents, expressly or by implication, that any attached or unattached documents or records concerning the Debt forming the basis for the lawsuit have been reviewed by the affiant, when that is not the case; or

d. In which the affiant represents, expressly or by implication, that the affiant has personally reviewed the Affidavit, when that is not the case.

## X.

### PROHIBITION AGAINST FALSE OR MISLEADING REPRESENTATIONS

**IT IS FURTHER ORDERED** that, in connection with the collection of debt, Respondent, Respondent's officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Consent Order, whether acting directly or indirectly, are permanently restrained and prohibited from:

122. Making any material misrepresentation or omission or assisting others in making any material misrepresentation or omission, expressly or by implication, including but not limited to misrepresentations:

    a. To obtain a Consumer's consent to receive calls from a computer dialing system, including but not limited to, representations that the only means by which a Consumer can avoid collection calls during certain time periods is through consent to receiving calls to his or her cell phone.

    b. That an attorney has reviewed a Consumer's Debt, where an attorney has not done so;

    c. That a Debt Collection Lawsuit has been filed against the Consumer, where a Debt Collection Lawsuit has not been filed previously;

    d. That a Debt Collection Lawsuit may be filed against the Consumer unless a payment is received, where an attorney has not previously reviewed and approved the Debt for suit.

123. Using its "Litigation Department" or any similarly named office or group to collect or attempt to collect a Debt through solicitation, including but not limited phone calls or through writing, unless:

    a. An attorney has personally reviewed the Debt; or

    b. The solicitation or writing Clearly and Prominently discloses that no attorney has reviewed the Debt when in fact an attorney has not done so.

124. Using outside Law Firms to collect or attempt to collect a Debt, through solicitation including but not limited to phone calls or through writing, unless

    a. An attorney has personally reviewed the Debt; or

b.  The solicitation or writing Clearly and Prominently discloses that no

    attorney has reviewed the Debt when in fact an attorney has not done so.

## XI.

## PROHIBITION AGAINST DECEPTIVELY COLLECTING TIME-BARRED DEBT

**IT IS FURTHER ORDERED**  that Respondent, Respondent's officers, agents,

servants, employees, and attorneys, and all other persons in active concert or

participation with any of them, who receive actual notice of this Consent Order, whether

acting directly or indirectly, are permanently restrained and prohibited from:

125.  Collecting or attempting to collect any Time-Barred Debt through litigation

or arbitration.

126.  Collecting or attempting to collect any Time-Barred Debt through any

means, including but not limited to telephone calls and written communications without

Clearly and Prominently disclosing to the Consumer:

a.  For those Time-Barred Debts that generally cannot be included in a consumer

    report under the provisions of the FCRA, 15 U.S.C. § 1681c(a), but can be

    collected through other means pursuant to applicable state law, Respondent

    will include the following statement: "The law limits how long you can be sued

    on a debt and how long a debt can appear on your credit report. Due to the age

    of this debt, we will not sue you for it or report payment or non-payment of it to

    a credit bureau;" and

b. For those Time-Barred Debts that can be collected through other means pursuant to applicable state law, and may be included in a consumer report under the provisions of the FCRA, 15 U.S.C. § 1681c(a), Respondent will include the following statement: "The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it. "

127.    Making any representation or statement, or taking any other action that interferes with, detracts from, contradicts, or otherwise undermines the disclosures required in Paragraph 126 of this section.

128.    Respondent will be deemed to have complied with the disclosure requirements of Paragraph 126 if it makes a disclosure to Consumers in a specific jurisdiction that (1) is required by the laws or regulations of that jurisdiction, (2) complies with those laws or regulations, and (3) is substantially similar to the disclosure required by Paragraph 126.

## XII.

## COMPLIANCE PLAN

129.    Within 60 days from the Effective Date, Respondent must submit to the Enforcement Director for review and determination of non-objection a comprehensive compliance plan designed to ensure that Respondent's Debt collection practices comply with all applicable Federal consumer financial laws and the terms of this Consent Order (Compliance Plan). The Compliance Plan must include, at a minimum

a.    Comprehensive, written policies and procedures designed to prevent violations of applicable Federal consumer financial protection laws and prevent associated risks of harm to consumers;

b.    Comprehensive, written policies and procedures designed to ensure that Respondent conducts due diligence regarding the accuracy of the information it acquires from Creditors;

c.    Comprehensive, written policies and procedures designed to insure that Law Firms engaged by Respondent to collect Debt do not violate any applicable Federal consumer financial protection laws that must include at a minimum:

   i. An analysis to be conducted by Respondent, prior to Respondent entering into a contract with the Law Firm, of the ability of the Law Firm to perform  its obligations in compliance with all applicable Federal consumer financial laws and Respondent's related policies and procedures;

   ii. For new and renewed contracts, a written contract between the Respondent and the Law Firm, which sets forth the responsibilities of each party, including:

                    1.    the Law Firm's specific performance responsibilities and duty to maintain adequate internal controls;

                         Page 40 of 60

2.      the Law Firm's duty to provide adequate training on compliance with all applicable Federal consumer financial laws and Respondent's related policies and procedures;

3.      the Law Firm's duty to alert Respondent whenever a  Consumer submits an oral or written dispute or asserts a defense to a Debt Collection Lawsuit, including but not limited to a dispute concerning the accuracy or validity of the Debt or any assertion that the Debt was Time-Bared;

4.      Respondent's  authority to conduct periodic onsite reviews of the Law Firm's controls, performance, and information systems related to Debt collection on behalf of Respondent; and

5.      Respondent's right to terminate the contract if the Law Firm materially fails to comply with the terms specified in the contract, including the terms required by this Paragraph; and

iii.      Periodic review by Respondent of Law Firm's controls, performance, and information systems related to Debt Collections.

d.      An effective training program that includes regular, specific, comprehensive training in consumer protection laws commensurate with individual job functions and duties for appropriate employees, including all employees having responsibilities that relate to consumer protection laws, senior management and the Board;

e.      An enhanced and well-documented internal risk-focused monitoring process incorporated into the daily work of Respondent's employees that is designed to detect and promptly correct compliance weaknesses of the Respondent and its service providers, particularly weaknesses that impact Consumers;

f.      An effective consumer complaint monitoring process, including the maintenance of adequate records of all written, oral, or electronic complaints from Consumers or inquiries, formal or informal, received by Respondent and its service providers and the resolution of the complaints and inquiries; and

g.      Effective independent audit coverage of the Compliance Program and Respondent's compliance with all Federal consumer protection laws and internal policies and procedures.

130.    The Enforcement Director will have the discretion to make a determination of non-objection to the Compliance Plan or direct Respondent to revise it. In the event that the Enforcement Director directs Respondent to revise the Compliance Plan, Respondent must make the revisions and resubmit the Compliance Plan to the Enforcement Director within 30 days.

131.    After receiving notification that the Enforcement Director has made a determination of non-objection to the Compliance Plan, Respondent must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Compliance Plan.

132.    Notwithstanding the foregoing, Respondent must take whatever steps necessary to fully implement all of the requirements and restrictions described in Paragraphs 116 and 119-120 within 180 days of the Effective Date and all of the requirements and restrictions described in Paragraphs 121 and 125-128 within 90 days of the Effective Date.

## XIII.

## ROLE OF THE BOARD

**IT IS FURTHER ORDERED that:**

133.    The Board must review all submissions (including plans, reports, programs, policies, and procedures) required by this Consent Order prior to submission to the Bureau.

134.    Although this Consent Order requires Respondent to submit certain documents for the review or non-objection by the Enforcement Director, the Board will have the ultimate responsibility for proper and sound management of Respondent and for ensuring that Respondent complies with applicable Federal consumer financial law and this Consent Order.

135.    In each instance that this Consent Order required the Board to ensure adherence to, or undertake to perform certain obligations of Respondent, the Board must:

a.    Authorize whatever actions are necessary for Respondent to fully comply with the Consent Order;

b.    Require timely reporting by management to the Board on the status of compliance obligations to be taken under the terms of this Consent Order; and

c.    Require timely and appropriate corrective action to remedy any material non-compliance with and any failures to comply with Board directives related to this Section.

## XIV.

### ORDER TO PAY REDRESS

**IT IS ORDERED** that:

136.    Within 10 days of the Effective Date, Respondent must reserve or deposit into a segregated deposit account an amount not less than $19,045,443 for the purpose of providing redress to Restitution Eligible Consumers as required by this Consent Order.

137.    For the 837 Restitution Eligible Consumers eligible for Time-Barred Debt Restitution, Respondent must provide full restitution, expected to total approximately $860,607, of all payments made, directly or indirectly, during the Relevant Time Period.

138.    For the 38,246 Restitution Eligible Consumers eligible for Litigation Department Calls Restitution, Respondent must refund all such payments, expected to total approximately $18,184,836, made between July 21, 2011 and July 17, 2014.

139.    For the judgments obtained during the Relevant Time Period from Time-Barred Debt Collection Lawsuits that have yet to be paid, expected to total approximately $3,411,094, Respondent must within 90 days of the Effective Date:

a.    Withdraw, dismiss, or terminate all pending Time-Barred Debt Collection Lawsuits;

b.    Release or move to vacate all judgments obtained during the Relevant Period in Time-Barred Debt Collection Lawsuits;

c.    Cease post-judgment enforcement activities and cease accepting settlement payments related to any Time-Barred Debt Collection Lawsuit;

d.    Request that the consumer reporting agencies amend, delete, or suppress information regarding any Time-Barred Debt Collection Lawsuits, and associated judgments, as applicable.

### Redress Plan

140.    Within 30 days of the Effective Date, Respondent must submit to the Enforcement Director for review and non-objection a comprehensive written plan for

providing redress consistent with this Consent Order ("Redress Plan"). The Enforcement Director will have the discretion to make a determination of non-objection to the Redress Plan or direct Respondent to revise it. If the Enforcement Director directs Respondent to revise the Redress Plan, Respondent must make the revisions and resubmit the Redress Plan to the Enforcement Director within 30 days. After receiving notification that the Enforcement Director has made a determination of non-objection to the Redress Plan, Respondent must implement and adhere to the steps, recommendations, deadlines, and timeframes set forth in the Redress Plan.

141.    With respect to redress paid to Restitution Eligible Consumers, the Redress Plan must include: (1) the form of the letters ("Redress Notification Letters") to be sent notifying Restitution Eligible Consumers of the redress; and (2) the form of the envelope that will contain the Redress Notification Letter. The Redress Notification Letter sent to Restitution Eligible Consumers receiving Time-Barred Debt Restitution must include language explaining the manner in which the amount of redress was calculated; a statement that the provision of the refund payment is in accordance with the terms of this Consent Order; and a statement that accepting payment of redress will not subject the Consumer to any new Debt collection or credit reporting activities for that Debt. The Redress Notification Letters sent to Restitution Eligible Consumers receiving Litigation Department Calls Restitution must include language explaining the manner in which the amount of redress was calculated; a statement that the provision of the refund payment is in accordance with the terms of this Consent Order; and may include a statement that

Page 46 of 60

Respondent is not waiving its right to collect the remaining amount of the Debt, if any, in excess of any refund payment made under this Consent Order. Respondent must not include in any envelope containing a "Redress Notification Letter" any materials other than the approved letters and redress checks, unless Respondent has obtained written confirmation from the Enforcement Director that the Bureau does not object to the inclusion of such additional materials.

142.    The Redress Plan must include a description of the following:

a.    methods used and the time necessary to compile a list of potential Restitution Eligible Consumers;

b.    methods used to calculate the amount of redress to be paid to each Restitution Eligible Consumers as required herein;

c.    procedures for issuance and tracking of redress to Restitution Eligible Consumers;

d.    methods and procedures used and the time necessary to withdraw, dismiss, move to vacate, terminate, or release the Time-Barred Debt Collection Lawsuits and associated judgments, or to cease enforcement activities on Time-Barred Debt Collection Lawsuit judgments;

e.    procedures for monitoring compliance with the Redress Plan

f.    the process for providing restitution for Restitution Eligible Consumers, which shall include the following requirements:

i.Respondent must mail a check to any Restitution Eligible Consumer along

with a Redress Notification Letter;

      ii.Respondent must send the check by United States Postal Service first-class mail, address correction service requested, to the Restitution Eligible Consumer's last known address as maintained by Respondent's records.

      iii.Respondent must make reasonable attempts to obtain a current address for any Restitution Eligible Consumer whose Redress Notification Letter and/or restitution check is returned for any reason, using the National Change of Address System, and must promptly re-mail all returned letters and/or restitution checks to current addresses, if any. If the check for any Restitution Eligible Consumer is returned to Respondent after such second mailing by Respondent, or if a current mailing address cannot be identified using National Change of Address System, Respondent must retain the restitution amount of such Restitution Eligible Consumer for a period of three-hundred sixty (360) days from the date the restitution check was originally mailed, during which period such amount may be claimed by such Restitution Eligible Consumer upon appropriate proof of identity. After such time these monies will be deposited into the U.S. Treasury as disgorgement.

143. The Redress Plan shall allow for a reduction in the amount of any payments previously refunded to a Restitution Eligible Customer by Respondent prior to the Effective Date.

144.    If Respondent claims to have made any restitution prior to the Effective Date of this Consent Order that complies with the requirements of this Consent Order, Respondent must provide appropriate proof of such restitution to the Enforcement Director.

145.    After completing the Redress Plan, if the amount of redress provided to Restitution Eligible Consumers is less than $19,045,443, within 30 days of the completion of the Redress Plan, Respondent must pay to the Bureau, by wire transfer to the Bureau or to the Bureau's agent, and according to the Bureau's wiring instructions, the difference between the amount of redress provided to Restitution Eligible Consumers and $19,045,443.

146.    The Bureau may use these remaining funds to pay additional redress to Restitution Eligible Consumers. If the Bureau determines, in its sole discretion, that additional redress is wholly or partially impracticable or otherwise inappropriate, or if funds remain after the additional redress is completed, the Bureau will deposit any remaining funds in the U.S. Treasury as disgorgement. Respondent will have no right to challenge any actions that the Bureau or its representatives may take under this Section.

147.    Respondent must not condition the payment of any redress to any Restitution Eligible Consumer under this Consent Order on that person's agreement to any condition, such as the waiver of any right.

### Assessment of Redress

148.    Respondent must retain at its own expense the services of an independent

certified accounting firm ("Firm"), within 15 days after the Enforcement Director's non-objection pursuant to Paragraph 140, to determine compliance with the Redress Plan. The Firm shall determine compliance in accordance with the attestation standards established by the American Institute of Certified Public Accountants for agreed-upon procedures for engagements.

149.    Prior to engagement, and no later than 60 days from the Effective Date, Respondent must submit the name and qualifications of the Firm, together with the proposed engagement letter with the Firm and the proposed agreed-upon procedures, to the Enforcement Director for non-objection. Within 15 days after submission of the Firm's name, the Enforcement Director must notify Respondent in writing of the Bureau's objection or non-objection thereto.

150.    The Firm must prepare a detailed written report of its assessment of Respondent's compliance with the terms of the Redress Plan ("Restitution Report"). The Restitution Report must include an assessment of the Redress Plan and the methodology used to determine the population of Eligible Consumers, the amount of redress for each Restitution Eligible Consumer, the procedures used to issue and track redress payments, and the work of any independent consultants that Respondent has used to assist and review its execution of the Redress Plan.

151.    The Firm must submit the Restitution Report to the Enforcement Director and the Board within 90 days after Respondent completes implementation of the Redress Plan.

# XV.

## ORDER TO PAY CIVIL MONEY PENALTIES

**IT IS FURTHER ORDERED that:**

152.    Under Section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law alleged in Section IV of this Consent Order, and taking into account the factors in 12 U.S.C. § 5565(c)(3), Respondent must pay a civil money penalty of $8,000,000 to the Bureau.

153.    Within 10 days of the Effective Date, Respondent must pay the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

154.    The civil money penalty paid under this Consent Order will be deposited in the Civil Penalty Fund of the Bureau as required by Section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

155.    Respondent must treat the civil money penalty paid under this Consent Order as a penalty paid to the government for all purposes.  Regardless of how the Bureau ultimately uses those funds, Respondent must not:

      a.    Claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty that Respondent pays under this Consent Order; or

      b.    Seek or accept, directly or indirectly, reimbursement or

indemnification from any source, including but not limited to
payment made under any insurance policy, with regard to any civil
money penalty paid under this Consent Order.

156.    To preserve the deterrent effect of the civil money penalty in any Related

Consumer Action, Respondent may not argue that Respondent is entitled to, nor may

Respondent benefit by, any offset or reduction of any compensatory monetary remedies

imposed in the Related Consumer Action, because of the civil money penalty paid in this

action ("Penalty Offset"). If the court in any Related Consumer Action grants such a

Penalty Offset, Respondent must, within 30 days after entry of a final order granting the

Penalty Offset, notify the Bureau, and pay the amount of the Penalty Offset to the U.S.

Treasury. Such a payment will not be considered an additional civil money penalty and

will not change the amount of the civil money penalty imposed in this action.

## XVI.

### ADDITIONAL MONETARY PROVISIONS

157.    In the event of any default on Respondent's obligations to make payment

under this Consent Order, interest, computed under 28 U.S.C. § 1961, as amended, will

accrue on any outstanding amounts not paid from the date of default to the date of

payment, and will immediately become due and payable.

158.    Respondent must relinquish all dominion, control, and title to the funds

paid to the fullest extent permitted by law and no part of the funds may be returned to

Respondent.

159.    Under  31 U.S.C. § 7701, Respondent , unless it already has done so, must furnish to the Bureau its taxpayer identifying numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Consent Order.

160.    Within 30 days of the entry of a final judgment, consent order, or settlement in a Related Consumer Action, Respondent must notify the Enforcement Director of the final judgment, consent order, or settlement in writing.  That notification must indicate the amount of redress, if any, that Respondent paid or is required to pay to Consumers and describe the Consumers or classes of Consumers to whom that redress has been or will be paid.

## XVII.

## REPORTING REQUIREMENTS

161.    Respondent must notify the Bureau of any development that may affect compliance obligations arising under this Consent Order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Consent Order; any default under a lending agreement under Section VII, Paragraph 118(iv); the filing of any bankruptcy or insolvency proceeding by or against Respondent; or a change in Respondent's name or address. Respondent must provide this notice at least 30 days before the development or as soon as practicable after the learning about the development, whichever is sooner.

162.    Within 90 days of the Effective Date, and again one year after the Effective
Date,  Respondent must submit to the Enforcement Director an accurate written
compliance progress report (Compliance Report), which has been approved by the Board,
which, at a minimum:

a.    Describes in detail the manner and form in which Respondent has complied
with this Consent Order; and

b.    Attaches a copy of each Consent Order acknowledgment obtained under
Section XVIII of this Order, unless previously submitted to the Bureau.

## XVIII.

## ORDER DISTRIBUTION AND ACKNOWLEDGEMENT

**IT IS FURTHER ORDERED** that:

163.    Within 30 days of the Effective Date, Respondent must deliver a copy of this
Consent Order to each of its board members and each executive officer, as well as to any
managers, employees, service providers, or other agents and representatives who have
responsibilities related to the subject matter of the Order.

164.    For 5 years from the Effective Date, Respondent must deliver a copy of this
Consent Order to any business entity resulting from any change in structure as set forth
in Section XVII, any future board members and executive officers, as well as to any
managers, employees, service providers, or other agents and representatives who will
have responsibilities related to the subject matter of the Consent Order before they
assume their responsibilities.

165.    Respondent must secure a signed and dated statement acknowledging receipt of a copy of this Consent Order, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. § 7001 et seq., within 30 days of delivery, from all persons receiving a copy of this Consent Order under this Section.

## XX.

## RECORD KEEPING

**IT IS FURTHER ORDERED** that:

166.    Respondent must create, for at least 5 years from the Effective Date, the following business records:

a.    All documents and records necessary to demonstrate full compliance with each provision of this Consent Order, including all submissions to the Bureau; and

b.    All documents and records pertaining to the Redress Program, as set forth in Section XIV above.

167.    Respondent must retain the documents identified in Paragraph 166 for at least 5 years.

168.    Respondent must make the documents identified in Paragraph 166 available to the Bureau upon the Bureau's request.

## XX.

## NOTICES

169.    Unless otherwise directed in writing by the Bureau, Respondent must provide all submissions, requests, communications, or other documents relating to this

Consent Order in writing, with the subject line, "In re Portfolio Recovery Associates, File

No. 2015-CFPB –[Docket #] and send them:

      a.     By overnight courier (not the U.S. Postal Service), as follows:

Assistant Director for Enforcement
Consumer Financial Protection Bureau
ATTENTION: Office of Enforcement
1625 I Street, N.W.
Washington D.C. 20006; or

      b.     By U.S. first-class mail to the below address and contemporaneously by

email to Enforcement_Compliance@cfpb.gov:

Assistant Director for Enforcement
Consumer Financial Protection Bureau
ATTENTION: Office of Enforcement
1700 G Street, N.W.
Washington D.C. 20552

## XXI.

### COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, to monitor Respondent's compliance with

this Consent Order:

      170.   Within 14 days of receipt of a written request from the Bureau, Respondent

must submit additional compliance reports or other requested information, which must

be made under penalty of perjury; provide sworn testimony; or produce documents.

      171.   Respondent must permit Bureau representatives to interview any employee

or other person affiliated with Respondent who has agreed to such an interview. The

person interviewed may have counsel present.

172.    Nothing in this Consent Order shall limit the Bureau's lawful use of civil investigative demands under 12 C.F.R. § 1080.6 or other compulsory process.

## XXII.

### Modifications to Non-Material Requirements

**IT IS FURTHER ORDERED**

173.    Respondent may seek a modification to non-material requirements of this Consent Order (*e.g.*, reasonable extensions of time and changes to reporting requirements) by submitting a written request to the Enforcement Director.

174.    The Enforcement Director may, in his/her discretion, modify any non-material requirements of this Consent Order (*e.g.*, reasonable extensions of time and changes to reporting requirements) if he/she determines good cause justifies the modification. Any such modification by the Enforcement Director must be in writing.

Upon a written showing of good cause, the Enforcement Director may modify any provision of this Consent Order to the extent that compliance with that provision could cause Respondent, its Board, officers, or employees to violate any law, rule, or regulation, including but not limited to any subsequent amendments of the CFPA, FCRA, or FDCPA.

## XXIII.

### ADMINISTRATIVE PROVISIONS

175.    The provisions of this Consent Order do not bar, estop, or otherwise prevent the Bureau, or any other governmental agency from taking any other action against Respondent, except as described in Paragraph 176.

176.    The Bureau releases and discharges Respondent from all potential liability for law violations that the Bureau has or might have asserted based on the practices described in Section IV of this Consent Order, to the extent such practices occurred before the Effective Date and the Bureau knows about them as of the Effective Date. The Bureau may use the practices described in this Consent Order in future enforcement actions against Respondent and its affiliates, including, without limitation, to establish a pattern or practice of violations or the continuation of a pattern or practice of violations or to calculate the amount of any penalty. This release does not preclude or affect any right of the Bureau to determine and ensure compliance with the Consent Order, or to seek penalties for any violations of the Consent Order.

177.    This Consent Order is intended to be, and will be construed as, a final Consent Order issued under Section 1053 of the CFPA, 12 U.S.C. § 5563, and expressly does not form, and may not be construed to form, a contract binding the Bureau or the United States.

178.    This Consent Order will terminate 5 years from the Effective Date or 5 years from the most recent date that the Bureau initiates an action alleging any violation of the Consent Order by Respondent. If such action is dismissed or the relevant adjudicative body rules that Respondent did not violate any provision of the Consent Order, and the dismissal or ruling is either not appealed or upheld on appeal, then the Consent Order will terminate as though the action had never been filed. The Consent Order will remain effective and enforceable until such time, except to the extent that any provisions of this

Consent Order have been amended, suspended, waived, or terminated in writing by the Bureau or its designated agent.

179.    Calculation of time limitations will run from the Effective Date and be based on calendar days, unless otherwise noted.

180.    Should Respondent seek to transfer or assign all or part of its operations or assets that are subject to this Consent Order, Respondent must, as a condition of sale, obtain the written agreement of the transferee or assignee to comply with all applicable provisions of this Consent Order.

181.    The provisions of this Consent Order will be enforceable by the Bureau. For any violation of this Consent Order, the Bureau may impose the maximum amount of civil money penalties allowed under section 1055(c) of the CFP Act, 12 U.S.C. § 5565(c). In connection with any attempt by the Bureau to enforce this Consent Order in federal district court, the Bureau may serve Respondent wherever Respondent may be found and Respondent may not contest that court's personal jurisdiction over Respondent.

182.    This Consent Order and the accompanying Stipulation contain the complete agreement between the parties. The parties have made no promises, representations, or warranties other than what is contained in this Consent Order and the accompanying Stipulation. This Consent Order and the accompanying Stipulation supersede any prior oral or written communications, discussions, or understandings.

183.    Nothing in this Consent Order or the accompanying Stipulation may be construed as allowing Respondent, its Board, officers, or employees to violate any law, rule, or regulation.

SO ORDERED this __8th__ day of ___September___, 2015.

_____
Richard Cordray