# Exhibit C

# THE DEBT COLLECTION RACKET IN NEW YORK

HOW THE INDUSTRY VIOLATES DUE PROCESS AND PERPETUATES ECONOMIC INEQUALITY

JUNE 2013



# TABLE OF CONTENTS



| | |
|---|---|
| 1 | Introduction |
| 3 | Debt Collection Lawsuits in New York State |
| 5 | Impact on Communities of Color |
| 6 | Regional Snapshots |
| | *Maps:* |
| 7 | Buffalo |
| 8 | Capital District |
| 9 | Nassau County |
| 10 | New York City |
| 11 | Rochester |
| 12 | Syracuse |
| 13 | Recommendations |
| 14 | Endnotes / Methodology |

*The Debt Collection Racket in New York: How the Industry Violates Due Process and Perpetuates Economic Inequality*

Copyright © 2013 – New Economy Project
All Rights Reserved.

This report was produced by New Economy Project.

Authors: Susan Shin and Claudia Wilner
Editors: Sarah Ludwig and Josh Zinner
Maps and Production: Ben Hagen
Research Analysis: Alexis Iwanisziw and Claudia Wilner

About the organization:
New Economy Project (formerly NEDAP) works with community groups in New York City to promote economic justice and to eliminate discriminatory economic practices that harm communities and perpetuate inequality and poverty.

New Economy Project would like to thank the five New Yorkers who shared their personal stories with us: D.B., Brian P., Christine R., Rosetta R., and Parvez S. We would also like to thank the following people for their generous assistance: Gail Miller and Alan Simms, NYS Office of Court Administration; and our colleagues, Lauren Breen, Vera Cedano, Carolyn Coffey, Evan Denerstein, Peter Dellinger, Ruhi Maker, Matthew Parham, Gary Pieples, and Nasoan Sheftel-Gomes.

# INTRODUCTION



Over the past decade, the number of debt collection lawsuits filed in New York's courts has exploded, with nearly 200,000 cases filed in 2011 alone. Creditors and debt buyers engage in an array of fraudulent and deceptive debt collection practices that siphon billions of dollars from New York's low-income neighborhoods and communities of color. Abusive debt collection falls along a continuum of discriminatory financial practices that pervade low-income neighborhoods and communities of color, long targeted by high-cost and predatory financial services providers.

The creditors and debt buyers that bring these lawsuits routinely engage in "sewer service" — falsely claiming to the courts that they have served people with court papers. They also engage in rampant "robo-signing" — mass-producing fraudulent documents that they then submit to the courts. Debt buyers — companies that buy old, charged-off debts for pennies on the dollar — file more than half of all debt collection lawsuits in New York, and systematically lie to the courts about key information that they do not in fact have.

Creditors and debt buyers engage in this fraud to obtain automatic, or "default," court judgments, which they then use to freeze people's bank accounts or garnish their wages. The judgments also appear on people's credit reports, blocking them from housing, employment, and credit access. Consequences have been especially dire for low-wage workers, elderly and disabled New Yorkers on fixed incomes, single mothers, and domestic violence survivors — and now also New Yorkers affected by last year's hurricane.

Debt collection abuses stem largely from structural problems related to the buying and selling of old, charged-off debts. When selling the debts, creditors, including the country's largest banks, disclaim virtually all liability for inaccuracies in the scant information they provide. When purchasing debts, debt buyers obtain only extremely limited information and cannot substantiate the debts in court.

The courts have long been on notice that debt buyers routinely fail to submit the legally-required documentation, and bear significant responsibility for allowing debt buyers to get away with fraud. Although New York City courts recently have taken some corrective measures, the courts overall continue to grant debt buyers hundreds of thousands of default judgments in violation of New York law.

> **Christine R., of Glens Falls, NY:** "I was planning to buy a car, so I checked my credit report, and I saw there was a judgment from a company I'd never heard of. I was in shock. The judgment wasn't valid. I never even lived where they said they served it. Everything about it was illegal. They don't go after the people who have money. They go after the disabled, elderly, poor, whoever can't fight them. I fought them and won, but I was an exception."

# INTRODUCTION



This study analyzes debt collection lawsuits filed across New York State, and builds upon previous research that focused on New York City.[1] New Economy Project analyzed two data sets for this report: (1) data obtained from the New York State Office of Court Administration on civil lawsuits, including debt collection lawsuits, filed against New Yorkers in 2011; and (2) 90 randomly-selected debt buyer lawsuits filed in six regions throughout the state: Buffalo, the Capital District, Nassau County, New York City, Rochester, and Syracuse.

The report includes key data findings, along with personal accounts from aggrieved New Yorkers and maps that show the disproportionate impact of abusive debt collection lawsuits on communities of color throughout New York State. According to our analysis, creditors and debt buyers that bring abusive debt collection lawsuits continue to deny due process to huge numbers of New Yorkers. Only two percent of all New Yorkers sued in debt collection cases had legal representation and almost two-thirds of lawsuits brought by debt buyers resulted in default judgments, for example.

Abusive debt collection practices are a product of our fundamentally unfair financial system. Structural change is needed to bring about an economy based on principles of equity, fairness, and inclusion. There are straightforward measures New York can take now, however, to significantly curb abusive debt collection practices and ensure due process for New Yorkers. Our state legislature, courts, and regulators — along with their federal counterparts — should act immediately to end these abuses.

> **Brian P., of Queens, NY:** "I'm a small business owner, and a lot of my work equipment was damaged during Superstorm Sandy. Last December I applied for disaster relief from the Small Business Administration so I could try to replace my equipment, but the SBA denied my application because of two judgments that were apparently on my credit report. I didn't even know that I had ever been sued, because I never got notice. I was even more shocked when I learned that the same debt buyer had actually sued me twice over the same supposed debt. When I went to court to challenge the judgments, the debt buyer didn't have any information about the cases and couldn't even tell me where the debt came from. Now, six months later, I'm still trying to get this information off my credit report so I can qualify for an SBA loan. I temporarily had to go on unemployment after Sandy, and am slowly getting back on my feet, but it's really hard without my equipment."

# DEBT COLLECTION LAWSUITS IN NEW YORK STATE



New Economy Project obtained statewide data from the Office of Court Administration concerning debt collection lawsuits filed in city and county courts ("Statewide Data").[2] We supplemented the Statewide Data with a detailed analysis of 90 lawsuits that debt buyers filed in courts across New York State ("Debt Buyer Data"). (See Methodology.)

We found that debt collection lawsuits — particularly those filed by debt buyers — wreak havoc across New York State, depriving hundreds of thousands of New Yorkers of due process and subjecting them to collection of debts that in all likelihood could never be legally proven.

Our analysis of the Statewide and Debt Buyer Data showed that the total number of default judgments entered in 2011 was extremely high. That year:

- Debt collectors filed 195,105 lawsuits against New Yorkers.

- Debt collection lawsuits accounted for 8 out of 10 of all default judgments entered.

- Overall, 42% of debt collection lawsuits resulted in default judgments — but debt buyers obtained default judgments in an estimated 62% of their cases.

- Only 2% of all New Yorkers sued had legal representation.

- Debt buyers brought more than half of all debt collection lawsuits.

- Debt buyers obtained an estimated $230 million in judgments against New Yorkers.

- Among the 90 debt buyer lawsuit files examined, not a single case went to trial or was resolved on the merits.

- Debt buyers virtually never prevailed in contested cases, but relied on winning cases by default or by intimidating unrepresented people into making settlement agreements.

> DEBT BUYERS VIRTUALLY NEVER PREVAILED IN CONTESTED CASES, BUT RELIED ON WINNING CASES BY DEFAULT OR BY INTIMIDATING UNREPRESENTED PEOPLE INTO MAKING SETTLEMENT AGREEMENTS.

# DEBT COLLECTION LAWSUITS IN NEW YORK STATE



> To obtain a default judgment under New York law, a debt buyer must provide "proof of the facts constituting the claim, the default and the amount due." This proof must be established by an affidavit from a party who has personal knowledge of the facts of the case. Under their business model, debt buyers cannot meet this standard. They have no connection to the original creditor, no access to the original creditor's books and records, and no personal knowledge of the facts to which they attest.
>
> NY CPLR § 3215(f); *Joosten v. Gale*, 514 N.Y.S.2d 729 (1st Dept. 1987).

New York's courts bear considerable responsibility for this state of affairs. In 2007 and 2010, legal services and community advocacy groups issued reports on debt collection lawsuits filed in New York City courts, which showed that debt buyers routinely obtained default judgments from the courts, even though they almost always failed to submit evidence of the debt as the law requires.[3] Our research shows that nothing has changed. **In our sample, for example, no application by a debt buyer for a default judgment complied with New York law.** The court nevertheless improperly granted default judgments on 97% of the applications.[4]

Our research also uncovered evidence of rampant "robo-signing" of affidavits, indicating pervasive due process violations and fraud on the courts:

- In 9 out of 10 cases, an employee of the debt buyer — who had no connection to the original creditor — fraudulently testified to facts that only the original creditor could possibly know.

- In 4 out of 10 cases, the affidavit in support of a default judgment was completed before the defendant's time to answer had expired, in expectation of a default that had not yet occurred.

Finally, we observed significant differences in outcomes between lawsuits filed against New York City residents and those filed against New Yorkers outside New York City. New York City courts had a lower default judgment and higher answer rate than non-NYC courts.[5] This difference is likely attributable to two key factors: First, people sued in New York City are more likely to receive notice due to an additional notice requirement that the New York City Civil Court adopted in 2008.[6] Second, New York City residents benefit from a range of free programs — some offered by the court itself and some by the private bar or legal services offices — designed to assist unrepresented litigants sued by debt collectors. Unfortunately, few similar programs exist outside New York City.

# IMPACT ON COMMUNITIES OF COLOR



Chart 1 shows the ten zip codes in New York State with the highest concentrations of default judgments in debt collection lawsuits, and indicates that communities of color disproportionately bear the brunt of abusive debt collection lawsuits.

Some of the most severely-affected communities are located outside New York City, in predominantly non-white, low-income neighborhoods in Albany and Buffalo. Six of the ten zip codes are clustered in predominantly middle-income black communities in southeast Queens, further underscoring the connection between abusive debt collection and race. These are the very communities that banks redlined for decades, and that in more recent years have been at the epicenter of the predatory lending and foreclosure crisis. Abusive debt collection practices are directly linked to broader economic discrimination, financial distress, and wealth inequality.

> ABUSIVE DEBT COLLECTION PRACTICES ARE DIRECTLY LINKED TO BROADER ECONOMIC DISCRIMINATION, FINANCIAL DISTRESS, AND WEALTH INEQUALITY.

**Chart 1. NYS zip codes with highest concentrations of default judgments (per 1,000 residents)**

| Rank | Zip Code | Neighborhood | % Non-White |
|---|---|---|---|
| 1 | 12207 | Greater South End, Albany | 80% |
| 2 | 14215 | Kenfield, Buffalo | 86% |
| 3 | 11422 | Rosedale, Queens | 95% |
| 4 | 12202 | Arbor Hill, Albany | 75% |
| 5 | 11411 | Cambria Heights, Queens | 99% |
| 6 | 11412 | Jamaica, Queens | 100% |
| 7 | 14211 | Schiller Park, Buffalo | 84% |
| 8 | 11434 | Jamaica, Queens | 99% |
| 9 | 11420 | South Ozone Park, Queens | 93% |
| 10 | 11413 | Jamaica, Queens | 99% |

# REGIONAL SNAPSHOTS



Chart 2 shows that debt collection lawsuits across the state overwhelmingly result in default judgments. Across the board, in all six regions highlighted, a staggeringly low percentage — only 2% — of New Yorkers sued in debt collection lawsuits had legal representation.

**Chart 2. Summary of Debt Collection Lawsuits and Civil Court Filings, in Six New York Regions (2011)**

|  | Buffalo City Court | Capital District city courts | Nassau County district and city courts | New York City Civil Court | Rochester City Court | Syracuse City Court |
|---|---|---|---|---|---|---|
| Total Civil Filings | 11,747 | 7,030 | 19,324 | 370,924 | 8,032 | 7,222 |
| Debt CollectionFilings | 8,963 | 5,389 | 8,899 | 134,980 | 7,148 | 3,428 |
| Total Default Judgments | 5,082 | 3,364 | 5,893 | 65,202 | 3,688 | 4,260 |
| Debt Collection Default Judgments | 4,870 | 2,872 | 4,284 | 51,086 | 3,386 | 2,133 |
| Total Answers Filed | 568 | 359 | 766 | 24,535 | 591 | 231 |
| Total Attorney Answers Filed | 171 | 59 | 221 | 2,966 | 128 | 58 |
| % of All Cases Filed That Were Debt Collection Lawsuits | 76% | 77% | 46% | 36% | 89% | 47% |
| % of All Default Judgments Entered That Were from Debt Collection Lawsuits | 96% | 96% | 73% | 78% | 92% | 50% |
| % of All Debt Collection Cases Resulting in Default Judgments | 54% | 54% | 48% | 38% | 47% | 62% |
| % of People Sued in Debt Collection Lawsuits Who Had Legal Representation | 2% | 2% | 2% | 2% | 2% | 2% |

The following maps show that throughout New York State, in every region examined, debt collection default judgments are disproportionately concentrated in neighborhoods of color. New Yorkers who live in neighborhoods of color are therefore more likely than people in predominantly white neighborhoods to have their wages garnished and bank accounts frozen, and their property encumbered by liens. The default judgments appear on people's credit reports, blocking them from fair access to employment and housing.



**D.B., of Akron, NY (outside Buffalo):** "I just learned earlier this year that a debt buyer had gotten a judgment against me in 2008 for a debt on a Household Finance loan. I've never taken out a Household Finance loan, but I've since learned that my abusive ex-husband may have taken out the loan out in my name years ago without my knowledge. I also found out that the debt buyer claimed to have served me with court papers at the house I used to share with my ex-husband, though I'm now divorced and haven't lived there since 2006."









**Parvez S., of Brooklyn:** "I lost my job and my home after September 11. I was also a victim of identity theft. I just found out that three debt buyers got judgments against me, even though I never got notice of the lawsuits. Even though I've lived in Brooklyn for over 10 years, two of the debt buyers claimed to have served me at addresses in the Bronx, and the third claimed to have served me at an address in Westchester County. I only learned of the judgments when I was being considered for an entry-level job as a messenger with an investment banking firm. After the firm ran a credit check, I found out that these judgments were on my credit report. The firm gave me 30 days to vacate the judgments and clear them from my credit report, but I couldn't clear the judgments in time, so I didn't get the job. I've since cleared two of the judgments and am still working to vacate the third so I can hopefully get a job."



**Rosetta R., of Syracuse:** "I didn't even know that I had ever been sued until late last year, when I found out that my wages were about to be garnished. Then I learned that two debt buyers had sued me years ago and gotten judgments against me, even though they never served me with the court papers. One of the debt buyers claimed to have served me at an old address that I wasn't living at any more, and the other used a process server that the Attorney General had sued for lying about serving people with court papers. Also, the debt buyers sued me in a name I haven't used since I came here from Jamaica 14 years ago, so I don't think these debts are even mine, and I'm worried that I may have been the victim of identity theft."

# RECOMMENDATIONS



Fundamental change is urgently needed to bring about a financial system based on principles of economic equity, fairness, and inclusion. Through their destructive practices, the credit and debt buying industries perpetuate poverty and inequality. The problems are structural, and must be addressed systemically. In the short term, however, New York can significantly curb abusive debt collection lawsuits by closing gaps in our state laws and rules. At a minimum:

- **New York should enact the Consumer Credit Fairness Act (S.2454/A.2678), which would ensure fundamental due process for New Yorkers sued by debt collectors.**

- **The New York State Office of Court Administration (OCA) should implement strong rules to prevent debt buyers from using the courts to collect on debts without having the proof that New York law requires**. The OCA should require, for example, that debt buyers submit an affidavit from the original creditor attesting to the underlying facts about the debt, along with proof of the debt's chain of title when applying for default judgments.

- **The NYS Department of Financial Services (DFS) should implement strong rules that require debt buyers to document debts when attempting to collect on them.**

- **Both the NYS Attorney General and DFS should take aggressive enforcement action against debt buyers that violate federal and state fair debt collection and other consumer protection laws.**

Federal regulators should hold banks accountable for the sale of charged-off debt. In the short term:

- **The Consumer Financial Protection Bureau should use its rule-making, enforcement, and supervisory authority over banks and debt collectors, and the Office of the Comptroller of the Currency should use its authority over national banks, to crack down on and prohibit abusive practices in the sale and collection of debts.**

# ENDNOTES / METHODOLOGY



## ENDNOTES

[1] Previous studies include: *Debt Deception: How Debt Buyers Abuse the Legal System to Prey on Lower-Income New Yorkers*, MFY Legal Services, NEDAP [now New Economy Project], The Legal Aid Society, and Urban Justice Center (May 2010) ("Debt Deception"); *Where's The Proof? When Debt Buyers Are Asked to Substantiate Their Claims in Collection Lawsuits, They Don't: A Study of Cases Filed Against New York City Employees and Retirees*, District Council 37 Municipal Employees Legal Services (November 2009); *Justice Disserved: A Preliminary Analysis of the Exceptionally Low Appearance Rate by Defendants in Lawsuits*, MFY Legal Services (June 2008); and *Debt Weight: The Consumer Credit Crisis in New York City and Its Impact on the Working Poor*, Urban Justice Center (October 2007) ("*Debt Weight*").

[2] Because data are available only for municipal courts that have adopted the UCMS case management system, our research significantly understates the impact of debt collection lawsuits on communities outside New York City, particularly suburban and rural communities that are not part of the municipal court system.

[3] *Debt Deception; Debt Weight.*

[4] Under New York law, to obtain a default judgment a debt buyer must submit an affidavit from a party to the action, i.e., the debt buyer itself. NY CPLR § 3215(f). In two out of five judgments reviewed, however, the affidavits in support of the judgment came only from people who were not employed by the debt buyer. In more than half of cases, the affidavits were so vague that it was impossible to tell for whom the affiant worked. Overall, in 95% of judgments reviewed, there was no identifiable affidavit from a party to the action, in violation of New York law. Furthermore, in seven out of ten cases, key facts in the affidavits were alleged only "on information and belief," with the result that the courts improperly issued judgments based solely on hearsay.

[5] In New York City, 38% of cases resulted in default judgments, and 18% of people sued appeared in court. Outside of New York City, 52% of cases resulted in default judgments, and only 7% of people sued appeared in court.

[6] In 2008, in response to widespread evidence of improper service in debt collection cases, the New York City Civil Court adopted an additional notice requirement. Court clerks mail the additional notice to the person sued at the address listed on the summons. Many people who do not receive the summons and complaint appear in response to the additional notice, and court clerks do not enter default judgments in cases in which the additional notice is returned as undeliverable. No similar requirement exists outside of New York City, though improper service is a statewide problem.

## METHODOLOGY

The Statewide Data includes the number of civil cases filed in city or county courts and, of those, the number of default judgments entered; the number of debt collection cases filed and, of those, the number of default judgments entered; and, for debt collection cases only, the number of pro se and attorney answers filed with the court. The Office of Court Administration (OCA) provided the Statewide Data for all courts for which data was available through the OCA's eCourts WebCivil Local database as of January 1, 2011. The Statewide Data also include the zip codes of all people sued in the debt collection lawsuits that were included in the data. The maps and chart in this report use these zip codes, along with demographic data from the 2010 U.S. Census. In Buffalo, the Capital District, Rochester, and Syracuse, communities of color are defined as census tracts in which the population is 35% or more non-white. In Nassau County and New York City, they are defined as census tracts in which the population is 50% or more non-white. Non-white is defined as the population subtracted by the number of people who (1) identify as white and (2) do not identify as Hispanic or Latino in the 2010 U.S. Census.

The Debt Buyer Data derives from the court files for 90 debt collection lawsuits brought by debt buyers in 2011. We selected fifteen court files at random from each of the six regions (We chose an initial index number at random and then every 50th index number. If one of the randomly selected files was not for a debt buyer lawsuit, we took the next 50th file). For Buffalo, Rochester, Syracuse and the Nassau County First District Court, the regional sample data consists of 15 randomly selected court files from each court. For the Capital District and New York City, which have three and five courts represented in the OCA data, respectively, the 15 court files that make up each region's sample were selected from among those courts in proportion to the number of debt collection lawsuits filed in those courts in 2010 and 2011 (In the Capital District, we pulled seven court files from Albany, five from Schenectady, and three from Troy. In New York City, we chose three from Bronx County, four from Kings County (Brooklyn), two from New York County (Manhattan), five from Queens County, and one from Richmond County (Staten Island)). We categorized the information from the court files by key data points, including whether a default judgment was entered and whether the judgment was entered in conformity with New York law. Due to its relatively limited size, the Debt Buyer Data set may not be representative of all debt buyer lawsuits filed in the state in 2011, but it nevertheless illustrates significant patterns in debt collection lawsuits filed by debt buyers in key regions of the state that year.