UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MARY ELLEN TOOHEY,                                              Case No. 15-CV-8098 (GBD)
individually and on behalf of all other similarly
situated,

                            Plaintiff,

        -against-

PORTFOLIO RECOVERY ASSOCIATES, LLC,
PRA GROUP, INC., MALEN & ASSOCIATES, P.C.

                            Defendants.
-----------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT MALEN & ASSOCIATES, P.C.'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**KAUFMAN DOLOWICH & VOLUCK, LLP**
*Attorneys for Defendant*
*Malen & Associates, P.C.*
Brett A. Scher, Esq.
Adam M. Marshall, Esq.
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
Phone: (516) 681-1100
Fax: (516) 681-1101
bscher@kdvlaw.com
amarshall@kdvlaw.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF THE FACTS ................................................................................... 2

ARGUMENT ................................................................................................................. 4

POINT I
PLAINTIFF'S CLAIMS ARE BARRED
UNDER THE ROOKER-FELDMAN DOCTRINE ...................................................... 5

POINT II
PLAINTIFF'S CLAIMS ARE BARRED BY RES JUDICATA ................................. 7

POINT III
THE COMPLAINT FAILS TO STATE A VIABLE CLAIM
FOR RELIEF UNDER THE FAIR DEBT COLLECTION PRACTICES ACT ........... 8

    A.      Plaintiff's FDCPA Claim is Time-Barred ........................................... 9

    B.      The Stephen Affidavit Cannot Form the Basis of an FDCPA Claim
            As It Was Exclusively Submitted to State Court Personnel
            and Not a Consumer .............................................................................. 11

    C.      The Stephen Affidavit was not Materially Misleading ...................... 13

POINT IV
THE COMPLAINT FAILS TO STATE A VIABLE CLAIM
FOR RELIEF UNDER THE RICO STATUTE .......................................................... 17

    A.      The Complaint Fails to Plausibly Allege that the Malen Firm
            was Part of a RICO Enterprise ............................................................ 17

    B.      The Complaint Fails to Allege a Pattern of Racketeering Activity ...... 18

    C.      The Complaint Fails to Allege Proximately Caused RICO Damages ...... 21

    D.      The RICO Conspiracy Claim Must be Dismissed
            Along With the Substantive Claim ...................................................... 22

POINT V
THE COMPLAINT FAILS TO STATE A CLAIM
AGAINST THE MALEN FIRM FOR VIOLATING GBL § 349 ................................................ 22

POINT VI
THE COMPLAINT FAILS TO STATE A CLAIM
FOR UNJUST ENRICHMENT ...................................................................................................... 24

CONCLUSION .................................................................................................................................... 25

**Cases**

Ashcroft v. Iqbal,
556 U.S. 662 (2009)........................................................................................... 4

Atsi Comm, Inc. v. Shaar Fund, Inc.,
493 F.3d 87 (2d Cir. 2007)............................................................................... 4

Bell Atlantic v. Twombly,
550 U.S. 544 (2007).......................................................................................... 4

Bildstein v. Mastercard Int'l Inc.,
239 F. Supp. 2d 410 (S.D.N.Y. 2004)............................................................ 24

Boyle v. U.S.,
556 U.S. 938 (2009).......................................................................................... 7

Brown v.Felsen,
442 U.S. 127 (1979).......................................................................................... 7

Brown v. Wells Fargo Bank, N.A.,
605 Fed. Appx. 58 (2d Cir. 2015).................................................................... 7

Cedar Swamp Holdings, Inc. v. Zaman,
487 F. Supp. 2d 444 (S.D.N.Y. 2007)............................................................ 18

Charell v. Gonzalez (In re Gonzalez),
241 B.R. 67 (S.D.N.Y. 1999)........................................................................... 7

Clark v. Main Street Acquisition Corp.,
553 Fed. Appx. 510 (6th Cir. 2014)............................................................... 16

Cofacredit, S.A. v. Windsor Plumbing Supply Co.,
187 F.3d 229 (2d Cir. 1999)........................................................................... 21

Conklin v. Jeffrey A. Maidenbaum, Esq.,
2013 WL 4083279 (S.D.N.Y. Aug. 13, 2013)......................................... 10, 11

Crawford v. Franklin Credit Mgmt. Corp.,
758 F.3d 473 (2d Cir. 2014)...................................................................... 22, 23

Curtis & Assocs., P.C. v. Law Offices of David L. Bushman, Esq,
758 F. Supp. 2d 153 (E.D.N.Y. 2010) ........................................................... 19

Daddona v. Gaudio,
156 F. Supp. 2d 153 (D. Conn. 2000)...................................................... 19, 20

D.C. Court of Appeals v. Feldman,
460 U.S. 462 (1983)........................................................................ 5

DirecTV, Inc. v. Rowland,
2005 WL 189722 (W.D.N.Y. Jan. 22, 2005) ............................................. 23

Discon, Inc. v. NYNEX Corp.,
93 F.3d 1055 (2d Cir. 1996)............................................................... 22

First Capital Asset Mgmt., Inc. v. Satinwood Inc.,
385 F.3d 159 (2d Cir. 2004)........................................................... 17, 18

Franzone v. City of New York,
2015 WL 2139121 (E.D.N.Y. May 4, 2015) ............................................ 19

Gabriele v. Am. Home Mortg. Servicing, Inc.,
503 Fed. Appx. 89 (2d Cir. 2012)..................................................... 12, 13

GICC Capital Corp. v. Technology Finance Group, Inc.,
67 F.3d 463 (2d Cir. 1995)................................................................ 19

Grigoriou v. First Resolution Inv. Corp.,
2014 WL 1270047 (W.D.N.Y. Mar. 26, 2014)........................................... 12

Hinds v. Option One Mortgage Corp.,
2012 WL 6827477 (E.D.N.Y. Dec. 6, 2012) ............................................. 8

Hoblock v. Albany Cty. Bd. of Elecs.,
422 F.3d 77 (2d Cir. 2005)............................................................ 5, 6, 7

Janson v. Katharyn B. Davis, LLC,
806 F.3d 435 (8th Cir. 2015) ............................................................. 14

Jenkins v. McCalla Raymer, LLC,
2011 U.S. Dist. LEXIS 95652 (N.D. Ga. July 28, 2011)................................. 14

Kassel v. Universal Fid. LP,
2014 WL 824335 (E.D.N.Y. Mar. 3, 2014) .............................................. 13

Kilkenny v. Law Office of Cushner & Garvey, L.L.P.,
2012 WL 1638326 (S.D.N.Y. May 8, 2012) ............................................. 22

Kropelnicki v. Siegel,
290 F.3d 118 (2d Cir. 2002)........................................................................ 12

LaCourte v. JPMorgan Chase & Co.,
2013 WL 4830935 (S.D.N.Y. Sept. 4, 2013)............................................. 24

Levoy v. Gatullo-Wilson,
170 Fed. Appx. 721 (2d Cir. 2006)............................................................. 19

Mandarin Trading Ltd. v. Wildenstein,
16 N.Y.3d 173, 919 N.Y.S.2d 465 (N.Y. 2011) .................................. 24, 25

Marshall v. Grant,
521 F. Supp. 2d 240 (E.D.N.Y. 2007) ......................................................... 8

Mascoll v. Strumpf,
2006 WL 2795175 (E.D.N.Y. Sept. 26, 2006) .......................................... 24

McAnaney v. Astoria Fin. Corp.,
2008 WL 222524, at *7 (E.D.N.Y. Jan. 25, 2008). .................................. 11

Monahan v. New York City Dep't of Corr.,
214 F.3d 275 (2d Cir. 2000)......................................................................... 7

Moss v. Morgan Stanley, Inc.,
719 F.2d 5 (2d Cir. 1983)........................................................................... 17

New York Univ. v. Cont'l Ins. Co,
87 N.Y.2d 308 (N.Y. 1995) ....................................................................... 23

Okyere v. Palisades Collection, LLC,
2013 WL 1173992 (S.D.N.Y. Mar. 22, 2013) .......................................... 11

O'Rourke v. Palisades Acquisition XVI,
635 F.3d 938 (7th Cir. 2011) ............................................................... 12, 13

Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,
85 N.Y.2d 20 (N.Y. 1995) ................................................................... 23, 24

Roberts v. Perez,
2014 WL 3883418 (S.D.N.Y. Aug. 7, 2014)............................................... 6

Rojas v. Forster & Garbus LLP,
2014 WL 3810124 (E.D.N.Y. July 31, 2014)...................................... 11, 12

Rooker v. Fidelity Trust Co.,
263 U.S. 413 (1923)................................................................................. 5

Schuh v. Druckman & Sinel, L.L.P.,
751 F. Supp. 2d 542 (S.D.N.Y. 2010)..................................................... 11

Sedima, S.P.R.L. v. Imrex Company, Inc.,
473 U.S. 479 (1985)................................................................................. 17

Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP,
806 F.3d 71 (2d Cir. 2015)....................................................................... 22

Sheridan v. Mariuz,
2009 WL 920431 (S.D.N.Y. Apr. 6, 2009)............................................. 21

Sheppard v. Beerman,
18 F.3d 147 (2d Cir. 1994)....................................................................... 4

Shetiwy v. Midland Credit Mgmt.,
15 F. Supp. 3d 437 (S.D.N.Y. 2014)....................................................... 19

Smallwood v. Lupoli,
2007 WL 2713841 (E.D.N.Y. Sept. 14, 2007) ...................................... 18

Smartix Int'l Corp. v. Mastercard Int'l, LLC,
355 Fed. Appx. 464 (2d Cir. 2009)......................................................... 17

Snyder v. U.S. Equities Corp.,
2014 WL 317189 (W.D.N.Y. Jan. 28, 2014).......................... 9, 10, 19, 20

Solomon v. Bell Atl. Corp.,
9 A.D.3d 49, 777 N.Y.S.2d 50 (1st Dep't 2004) ................................... 24

Spool v. World Child Int'l Adoption Agency,
520 F.3d 178 (2d Cir. 2008)..................................................................... 21

St. Clement v. Londa,
8 A.D.3d 89, 779 N.Y.S.2d 460 (1st Dep't 2004) ................................... 8

Swiatkowski v. Citibank,
745 F. Supp. 2d 150 (E.D.N.Y. 2010) ...................................................... 6

Utreras v. Chicago Title Ins. Co.,
2013 WL 4700564 (E.D.N.Y. Sept. 1, 2013) ........................................... 7

U.S. v. Rigas,
490 F.3d 208 (2d Cir. 2007)............................................................................ 20

U.S. v. Turkette,
425 U.S. 576 (1981)........................................................................................ 17

Vinokur v. Penny Lane Owners Corp.,
269 A.D.2d 226, 703 N.Y.S.2d 35 (1st Dep't 2000) ....................................... 8

Weaver v. James,
2011 WL 4472062 (S.D.N.Y. Sept. 27, 2011).......................................... 18, 19

Webb v. Asset Acceptance, LLC,
486 Fed. Appx. 596 (6th Cir. 2012)................................................................ 16

Zutel v. Wells Fargo Bank, N.A.,
2014 WL 4700022 (E.D.N.Y. Sept. 22, 2014) ............................................... 25

**Statutes and Rules**

15 U.S.C. § 1692........................................................................................ 8, 9, 11

18 U.S.C. § 1962........................................................................................ 17, 22

18 U.S.C. § 1344.............................................................................................. 20

Fed. R. Civ. P. 12.............................................................................................. 4

Fed. R. Civ. P. 9.............................................................................................. 19

CPLR 5015(a)(3) ............................................................................................... 8

GBL § 349................................................................................................ 22, 23, 24

4840-4269-3164, v. 1

Defendant Malen & Associates, P.C. (the "Malen Firm"), by its attorneys Kaufman Dolowich & Voluck, LLP, respectfully submits this memorandum of law in support of its motion to dismiss the putative Class Action Complaint ("Complaint")[1] of plaintiff Mary Ellen Toohey ("Plaintiff") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This ill-conceived putative class action is nothing more than Plaintiff's attempt to fabricate Fair Debt Collection Practices Act ("FDCPA"), Racketeer Influenced and Corrupt Organizations Act ("RICO"), New York General Business Law §349 ("GBL") and unjust enrichment claims after Plaintiff ignored a debt collection lawsuit and a judgment entered against her years ago. Plaintiff's claim arises from a debt collection lawsuit brought against her in New York State Supreme Court, Monroe County in June 2012 (the "Underlying Action"). The Malen Firm represented Portfolio Recovery Associates, LLC ("PRA LLC") as the plaintiff in the Underlying Action. Despite being properly served in the Underlying Action, Plaintiff failed to appear, resulting in a $1,405.04 money judgment being entered against her in March 2013. Apparently lacking any defense whatsoever to the claims in the Underlying Action, Plaintiff did not even dispute her debt when the Monroe County Sheriff garnished her wages and the judgment was satisfied in September 2014.

Now, more than three (3) years after she willfully defaulted in the debt collection lawsuit and more than two (2) years after judgment was entered against her, Plaintiff has launched this collateral attack on the judgment against her under the guise of a class action complaint under the FDCPA. Her claims must be rejected. As demonstrated herein, while Plaintiff makes outlandish claims of being the victim of some wide-ranging conspiracy to defraud consumers, her

---

[1] A copy of the Complaint is annexed to the Declaration of Brett A. Scher (the "Scher Decl.") as Exhibit "A".

fantastical narrative simply cannot be squared with the objective and undisputed facts as well as the pleading requirements for the claims she has asserted against the Malen Firm. Her claims focus on an affidavit of merit submitted by Malen's client, PRA LLC, in the Underlying Action that attested to PRA LLC's ownership of Plaintiff's debt and the amount of the debt (an affidavit that Plaintiff elected not to contest in those proceedings). Incredibly, Plaintiff never once argues that the substance of the affidavit of merit is false – not in this action and not in the Underlying Action. As discussed below, Plaintiff has failed to allege any misleading, deceptive, or fraudulent conduct by the Malen Firm during the Underlying Action, to wit, that PRA LLC did not own the debt or the amount requested was incorrect. Moreover, her claims are barred under the *Rooker-Feldman* doctrine as well as by *res judicata*. Likewise, her RICO-based claims fail on multiple grounds and, even if she could allege the elements of a RICO enterprise (which she cannot) as well as a substantive RICO violation, she does not dispute that her debt was due and owing and, thus, she failed to allege any RICO damages.

## STATEMENT OF FACTS

On June 6, 2012, PRA LLC, represented by the Malen Firm, commenced an action against Plaintiff in the Supreme Court of the State of New York, County of Monroe, under Index Number 12-6293 (the "Underlying Action"). The Underlying Action sought $923.05 plus accrued interest of $53.03 for a total indebtedness of $976.08. As set forth in the complaint in the Underlying Action, the debt at issue was owed to PRA LLC. (Scher Decl., Exhibit "B", Compl. at ¶ 50).

Plaintiff was served with the summons and complaint in the Underlying Action on or about July 12, 2012. (Scher Decl., Exhibit "C"). Plaintiff does not dispute that she was served with the summons and complaint. On or about August 6, 2012, the Malen Firm mailed an

additional copy of the summons in the Underlying Action to Toohey by first class mail. (Scher Decl., Exhibit "E"). Plaintiff does not dispute receipt of this secondary mailing.

After Plaintiff's time to respond to the Underlying Action had lapsed, on or about February 22, 2013, the Malen Firm filed an application with the Clerk of the Supreme Court for the entry of a default judgment against Plaintiff in the Underlying Action. (Compl. at ¶ 51). Submitted in conjunction with this application was an affidavit from PRA LLC employee and records custodian Yvette M. Stephen (the "Stephen Affidavit"). (Compl. at ¶ 53).

In her affidavit, Ms. Stephen averred that her affidavit was based upon: (a) her personal knowledge *of PRA LLC's record keeping system;* and (b) her review of PRA LLC's records, including records transferred to PRA LLC from the original creditor in the ordinary course of business. Based upon the records transferred to PRA LLC, she indicated that the date of last payment on Plaintiff's account was July 15, 2010, the amount due and payable was $923.05 as of March 31, 2011, and there were no known un-credited payments, counterclaims or offsets. (Compl. at ¶ 52; Scher Decl., Exhibit "D"). Plaintiff contends, in conclusory fashion, that the Stephen Affidavit did not make any reference to "account-level documentation" that Ms. Stephen reviewed and did not attach any supporting exhibits – implying, without any support in the law, that such was required by the New York court system. (Compl. at ¶ 53).

On March 18, 2013, a judgment in the amount of $1,405.04 was entered against Plaintiff, inclusive of costs and fees (the "Judgment"). (Compl. at ¶ 54). On or about May 8, 2013, the Malen Firm caused an income execution to be issued to Toohey's employer in connection with efforts to enforce the Judgment through wage garnishment. The Monroe County Sheriff was the enforcement officer with respect to the income execution. (Compl. at ¶ 55; Scher Decl., Exhibit "F").

On September 23, 2014, the Monroe County Sheriff's Office certified that the Judgment had been paid in full. (Scher Decl., Exhibit "F"). A formal satisfaction of judgment document was executed and filed with the Monroe County Clerk and sent to Plaintiff on or about November 17, 2014. (Compl. at ¶ 56; Scher Decl., Exhibit "G").

On October 14, 2015, Plaintiff commenced the instant action against PRA LLC and the Malen Firm.

## ARGUMENT

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept all of the factual allegations in the complaint as true. See Atsi Comm, Inc. v. Shaar Fund, Inc., 493 F.3d 87, 98 (2d Cir. 2007). However, a plaintiff can only survive a motion to dismiss if he provides the grounds upon which his claim rests through factual allegations beyond the level of speculation. Id. A motion to dismiss pursuant to 12(b)(6) should be granted if it appears that the plaintiff cannot prove facts in support of his claim that would entitle him to relief. See Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff must allege enough facts to state a claim that is plausible as opposed to merely conceivable. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

As detailed below, Plaintiff has failed to set forth plausible claims under Iqbal and Twombly against any of the defendants, let alone the Malen Firm. Under each of the causes of action, Plaintiff simply provides conclusory recitations of "findings" in a voluntary consent order between PRA and the CFPB that nowhere state a basis for asserting the claims asserted against the Malen Firm in this action. As set forth throughout this motion, the Complaint is subject to dismissal under Iqbal and Twombly for its failure to state a plausible claim against the Malen Firm.

**POINT I**
**PLAINTIFF'S CLAIMS ARE BARRED UNDER**
**THE ROOKER-FELDMAN DOCTRINE**

As a threshold matter, Plaintiff's assertion of RICO, GBL § 349 and unjust enrichment claims all violate the *Rooker-Feldman* doctrine. The doctrine, named for the U.S. Supreme Court's decisions in Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983), operates to deprive federal district courts of subject matter jurisdiction over claims which are, in substance, appeals from state court judgments. Hoblock v. Albany Cty. Bd. of Elecs., 422 F.3d 77, 85 (2d Cir. 2005). For the *Rooker-Feldman* doctrine to apply, four requirements must be met: (1) the federal court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state court judgment must have been rendered before the district court proceedings commenced. Hoblock at 85. The Second Circuit has characterized the first and fourth elements of this test as "procedural" and the second and third elements as "substantive." Id.

All the elements articulated in Hoblock are satisfied in this case. First, the undisputed facts confirm that Plaintiff lost the Underlying Action when the Judgment was entered against her on March 18, 2013. (Compl. at ¶ 54). Second, the entry of the Judgment in the Underlying Action in March 2013 preceded the filing of this lawsuit on October 14, 2015. (Scher Decl., Exhibit "A"). Third, the injuries Plaintiff complains of, at least with respect to her RICO, GBL § 349 and unjust enrichment claims, were all allegedly caused by the Judgment entered in the Underlying Action. Finally, Plaintiff is clearly seeking to have the Judgment invalidated and vacated as part of this lawsuit.

Plaintiff's RICO and state law causes of action all require a showing of *actual injury*. At bar, the only tangible injury alleged to have been sustained by Plaintiff is the entry and collection

of the Judgment itself. (Compl. at ¶¶ 89-90, 97, 100-101). This is a classic trait of a *Rooker-Feldman* case. See e.g., Roberts v. Perez, 2014 WL 3883418, at *3 (S.D.N.Y. Aug. 7, 2014) ("Most telling for purposes of Rooker-Feldman's causation requirement, Plaintiff suffered no tangible injuries prior to the issuance of the state-court judgment."). Plaintiff's allegations in this action challenge the *evidentiary basis* for the Judgment entered against her in the Underlying Action and essentially argues that the New York state court arrived at an erroneous conclusion based on legally insufficient hearsay testimony. (Compl. at ¶ 53). And, because Plaintiff believes the state court "got it wrong," so to speak, she is also asking this Court to award her money damages in an amount sufficient to reimburse her in the amount of the Judgment. (Compl. at ¶¶ 92, 98, 102). Thus, Plaintiff is, in every practical sense, asking this Court to "reject" and "undo" the Judgment. The *Rooker-Feldman* doctrine prohibits such claims.

A useful case on this issue is Swiatkowski v. Citibank, 745 F. Supp. 2d 150 (E.D.N.Y. 2010). In Swiatkowski, the loser of a prior state court foreclosure action brought suit against the defendant-bank (among others) seeking money damages for alleged RICO and civil rights violations perpetrated during the course of the foreclosure. The plaintiff alleged that the defendant had procured the foreclosure judgment through fraud by submitting "forged" and "falsified" documents during the course of the proceeding. Id. at 161. The court dismissed the action on *Rooker-Feldman* grounds. In explaining his reasoning for the dismissal, Judge Bianco emphasized that the state court judgment was the cause of plaintiff's alleged injuries and that, while the plaintiff had not expressly asked the federal court to review and overturn the judgment, the monetary relief sought in the lawsuit would have the same practical effect. Id. at 165, 167.

The reasoning is Swiatkowski applies here. Simply put, Plaintiff cannot avoid the application of the *Rooker-Feldman* doctrine by drafting the wherefore clause of her Complaint so as to omit any request for vacatur of the Judgment in the Underlying Action. The *Rooker-*

*Feldman* doctrine cannot be defeated through "clever pleading." Hoblock, 422 F.3d 88. Again, given that the Judgment being attacked in this lawsuit was a *money judgment*, and given that the Judgment has been satisfied of record, an award of monetary damages in favor of Plaintiff would negate the Judgment in the same way as a reversal on appeal. This, *Rooker-Feldman* does not allow. See Brown v. Wells Fargo Bank, N.A., 605 Fed. Appx. 58 (2d Cir. 2015) ("To the extent Brown requests that the federal court *to return his property to him* because the foreclosure judgment was obtained fraudulently, *Rooker-Feldman* bars his claim.") (emphasis added).

## POINT II
## PLAINTIFF'S CLAIMS ARE BARRED BY RES JUDICATA

All of Plaintiff's claims are also barred by *res judicata*. "Res judicata, or claim preclusion, operates to prevent a party from relitigating a claim after the claim has already been decided by a court of competent jurisdiction." Charell v. Gonzalez (In re Gonzalez), 241 B.R. 67, 72 (S.D.N.Y. 1999); see also Brown v. Felsen, 442 U.S. 127, 131 (1979); Monahan v. New York City Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000).

A particularly instructive case is Utreras v. Chicago Title Ins. Co., 2013 WL 4700564 (E.D.N.Y. Sept. 1, 2013). In that case, the District Court held that the plaintiff's fraud, predatory lending, and due process claims were barred by a prior default judgment entered against him under the doctrine of res judicata. The Court held that plaintiff's claims involved the prior action in that they "directly attack its validity," and that "the recoverability of the note and defendants' pursuit of legal remedies to recover on the note were necessarily adjudicated in the prior action". Id. at *3-4. As such, the Court held that the plaintiff was barred from maintaining claims based upon an argument that "the underlying note was invalid, that defendants lacked standing, and that the court lacked subject matter jurisdiction in the prior action" when a default judgment had already been entered against him in the prior action. Id. at *4 (citing Stoll v. Gottlieb, 305 U.S.

165, 171–72 (1938); <u>Hinds v. Option One Mortgage Corp.</u>, 2012 WL 6827477, at *5 (E.D.N.Y. Dec. 6, 2012) ("Inasmuch as [p]laintiff's fraud claim is premised on his allegations that [d]efendants obtained the underlying mortgage through predatory lending tactics and fraud, res judicata operates to preclude federal review of such a claim."), *report and recommendation adopted*, 2013 WL 132719 (E.D.N.Y. Jan 10, 2013).

The law in New York is that "[t]he remedy for fraud allegedly committed during the course of a legal proceeding *must be exercised in that lawsuit* by moving to vacate the civil judgment (CPLR 5015(a)(3)), and not by another plenary action collaterally attacking that judgment." <u>St. Clement v. Londa</u>, 8 A.D.3d 89, 90, 779 N.Y.S.2d 460 (1st Dep't 2004) (emphasis added); <u>see</u> <u>Vinokur v. Penny Lane Owners Corp.</u>, 269 A.D.2d 226, 703 N.Y.S.2d 35 (1st Dep't 2000). Indeed, federal courts have repeatedly rejected efforts by plaintiffs to re-litigate the sufficiency of the evidence used to support a judgment entered against them in another forum. <u>See</u> <u>Marshall v. Grant</u>, 521 F. Supp. 2d 240, 246 (E.D.N.Y. 2007) (citing <u>Campaniello Imports, Ltd. v. Saporiti Italia, S.p.A.</u>, 117 F.3d 655, 661–63 (2d Cir.1997) (holding district court properly dismissed as barred by res judicata an independent action for rescission of prior judgment on the basis of fraud)).

This case is no different. Because Plaintiff's claims are premised on allegations of fraud *within* the context of the Underlying Action, her sole remedy is to seek relief from the Judgment by way of motion practice in state court. Her claims in this action are barred by res judicata.

### POINT III
### THE COMPLAINT FAILS TO STATE A VIABLE CLAIM
### FOR RELIEF UNDER THE FAIR DEBT COLLECTION PRACTICES ACT

Assuming Plaintiff's claims are not dismissed under *Rooker-Feldman* or *res judicata*, the FDCPA claim is subject to dismissal on multiple grounds. The first cause of action seeks relief under the FDCPA, 15 U.S.C. § 1692, *et seq*. (Compl. at ¶¶ 57-65). This statute forbids "debt

collectors" from, *inter alia*, "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt," and "us[ing] unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. §§ 1692e and 1692f. Plaintiff claims that the Malen Firm violated the FDCPA by: "participating in the preparation and filing" of purportedly "fraudulent, deceptive and misleading affidavits and affirmations" in order to obtain the Judgment in the Underlying Action; and using the Judgment to "compel" local law enforcement officials to effectuate the garnishment of her wages. (Compl. at ¶ 64). As discussed above, Plaintiff does not dispute that she was aware of the Underlying Action or the garnishment of her wages, but did nothing about it.

As demonstrated below, not only is Plaintiff's FDCPA claim untimely under the applicable statute of limitations, but the conduct she complains of is not even actionable under FDCPA. There was no fraudulent or deceptive conduct here.

**A.**     **Plaintiff's FDCPA Claim is Time-Barred**

The FDCPA provides, in pertinent part, that "[a]n action to enforce any liability under this subchapter may be brought . . . within *one year* from the date on which the violation occurs." 15 U.S.C. § 1692k(d) (emphasis added). As the statute indicates, the one-year period runs from the date the defendant committed the alleged violation, not the date of discovery. Snyder v. U.S. Equities Corp., 2014 WL 317189, at *5 (W.D.N.Y. Jan. 28, 2014) (citing Thompson v. Ocwen Fin. Corp., 2013 WL 4522504 at *4 (D.Conn. Aug. 27, 2013) ("[T]he FDCPA [is an] "occurrence" statute[ ]. In other words, Thompson's FDCPA ... claims accrued on May 11, 2010, at the time of the alleged violations rather than at the time Thompson claims to have discovered them, in December 2012.").

In the instant case, the Plaintiff's FDCPA claim against the Malen Firm principally hinges on its submission of the Stephen Affidavit – an affidavit not signed by anyone affiliated

with the Malen Firm – in support of the application for default judgment in the Underlying Action. (Compl. at ¶ 64). The Stephen Affidavit was submitted in February 2013 and the Judgment entered thereon against Plaintiff on March 18, 2013, well over two (2) years before this lawsuit was filed. (Compl. at ¶ 54; Scher Decl., Exhibit "D"). Plaintiff's FDCPA claims are clearly time-barred.

Plaintiff, however, claims that she should be entitled to the tolling of all applicable statutes of limitation based on the "discovery rule" and "fraudulent concealment." (Compl. at ¶¶ 103-108). Equitable tolling, however, is only appropriate in "extraordinary circumstances," where a plaintiff establishes, among other things, that the defendant concealed from the plaintiff the existence of her cause of action and that the plaintiff's continued ignorance was not attributable to a lack of diligence on her part. See Conklin v. Jeffrey A. Maidenbaum, Esq., 2013 WL 4083279, at *5 (S.D.N.Y. Aug. 13, 2013); Snyder, 2014 WL 317189, at *5.

In the case at bar, Plaintiff claims that equitable tolling should apply to her claim because "[she] did not know, and could not have known, essential elements of her claim until the CFPB's Consent Order on September 8, 2015". (Compl. at ¶ 104). Her reliance on the CFPB Consent Order is entirely misplaced. First, the CFPB Consent Order does not provide any evidence whatsoever that the Malen Firm concealed the existence of Plaintiff's alleged claims from her. On the contrary, Plaintiff's FDCPA claim relies on her attack on the Stephen Affidavit as being inadequate to substantiate the PRA's entitlement to enter judgment against her in the Underlying Action. However, Plaintiff never once disputes that she was served with the Underlying Action, the Judgment and enforcement documents, yet did nothing about it. The Stephen Affidavit was, and remains, a publicly filed document submitted to the state court in connection with the Underlying Action. Thus, there was no concealment and Plaintiff's "head in the sand" approach to the Underlying Action prohibits her from claiming that she acted diligently to discover her

cause of action. See Conklin, 2013 WL 4083279, at *8 (A "plaintiff must allege that extraordinary circumstances prevented him from acting in a timely manner. . . Such extraordinary circumstances exist where "a plaintiff 'could show that it would have been impossible for a reasonably prudent person to learn' about his or her cause of action.") (internal citations omitted); see also McAnaney v. Astoria Fin. Corp., 2008 WL 222524, at *7 (E.D.N.Y. Jan. 25, 2008).

Moreover, even if the Court were to consider Plaintiff's contention that the CFPB Consent Order should be considered in the tolling analysis, it is critical to note that the Consent Order: (a) is not directed at the Malen Firm, (b) expressly notes that it is not an admission or denial of any of the facts alleged by Consumer Finance Protection Board against PRA, LLC; and (c) makes no factual findings concerning Plaintiff. Accordingly, Plaintiff's FDCPA claim is time-barred.

**B.**     **The Stephen Affidavit Cannot Form the Basis of an FDCPA Claim
As It Was Exclusively Submitted to State Court Personnel and Not A Consumer**

Beyond its untimeliness, Plaintiff's FDCPA claim also suffers from a pair of incurable substantive defects. To begin with, the Stephen Affidavit, as an affidavit of merit submitted directly to the state court, rather than to Plaintiff herself, is not actionable under the FDCPA. The FDCPA is a *consumer*-oriented statute. In keeping with the statute's avowed purpose "to protect consumers against debt collection abuses," 15 U.S.C. § 1692(e), numerous federal district courts within the Second Circuit have squarely held that in order for a misrepresentation to be actionable under the FDCPA, the false statement must be made to the debtor/consumer directly and not to a third-party, including the debtor's attorney or a court. See e.g., Okyere v. Palisades Collection, LLC, 2013 WL 1173992, at *10 (S.D.N.Y. Mar. 22, 2013); Schuh v. Druckman & Sinel, L.L.P., 751 F. Supp. 2d 542, 548-50 (S.D.N.Y. 2010); see also Rojas v. Forster & Garbus

LLP, 2014 WL 3810124, at *4 (E.D.N.Y. July 31, 2014); Grigoriou v. First Resolution Inv. Corp., 2014 WL 1270047, at *7 (W.D.N.Y. Mar. 26, 2014).

The Second Circuit itself has signaled its clear approval for the position that the alleged false statement must be directed to the consumer. See e.g. Kropelnicki v. Siegel, 290 F.3d 118, 130 (2d Cir. 2002); Gabriele v. Am. Home Mortg. Servicing, Inc., 503 Fed. Appx. 89 (2d Cir. 2012) ("the protective purposes of the FDCPA typically are not implicated 'when a debtor is instead protected by the court system and its officers.'" Id. at 96, n.1 (quoting Simmons v. Roundup Funding, LLC, 622 F.3d 93, 96 (2d Cir. 2010)).

In cases that have directly dealt with this issue, the courts continually refer to a need to show a false statement to the consumer – not a court. In O'Rourke v. Palisades Acquisition XVI, 635 F.3d 938 (7th Cir. 2011), the Seventh Circuit held that a debt collector's communications with a state court, though materially misleading, were not actionable under the FDCPA. The defendant, Palisades, had brought a Underlying Action against the plaintiff in state court and attached to its complaint an exhibit resembling a credit card statement that listed plaintiff O'Rourke's balance and created the (factually incorrect) impression that O'Rourke had received the statement and retained it without objection. The Seventh Circuit reasoned that, while the misrepresentation "reflect[ed] negatively on Palisades' debt collection practices," the FDCPA "regulates communications directed at the consumer" and "does not extend to communications that are allegedly meant to mislead the judge in a state court action." Id. at 939-40.

The reasoning in the foregoing decisions should be adopted in this case. Here, to the extent that Plaintiff's FDCPA claim is based entirely on the submission of the Stephen Affidavit in support of the request for the entry of a default judgment against Plaintiff in the Underlying Action – that affidavit was not misleading and even if it were deemed misleading, it was not directed at Plaintiff. Indeed, there is no allegation it was ever seen by Plaintiff as she failed to

appear in the Underlying Action. The court clerk on the receiving end of the Stephen Affidavit, like state-court judges, merely "[stood] as [an] impartial decision-maker[] in the discharge of [her] office." Id. at 944. The clerk "do[es] not have a special relationship with consumers" warranting an extension of the FDCPA's prohibitions. Id. at 943. For this reason as well, Plaintiff's FDCPA claim must fail.

## C.    The Stephen Affidavit was not Materially Misleading

Even assuming that the submission of the Stephen Affidavit to the court in the Underlying Action could be actionable by Plaintiff under the FDCPA, it cannot give rise to an actionable claim under the statue. In examining claims under the FDCPA, "[a]lthough the Second Circuit has yet to definitively rule on the issue, other circuits and district courts within this Circuit have 'held that the least-sophisticated-consumer standard also encompasses a materiality requirement; that is, statements must be *materially* false or misleading to be actionable under the FDCPA.'" Kassel v. Universal Fid. LP, 2014 WL 824335, at *2 (E.D.N.Y. Mar. 3, 2014) (emphasis in original) (citations omitted). Thus "not every technically false representation by a debt collector amounts to a violation of the FDCPA." Gabriele, 503 Fed. Appx. at 94.

At bar, Plaintiff contends that the Stephen Affidavit was "false and materially misleading" because "PRA employees cannot have legally sufficient personal knowledge of account level documentation created by [Plaintiff's] original creditor prior to PRA's acquisition of the account" since they purportedly "generally do nothing more than glance at figures on a computer screen in creating the affidavits." (Compl. at ¶¶ 40, 53). Plaintiff also appears to suggest that the Stephen Affidavit was in some way misleading because "it did not identify any account-level documentation substantiating her attestations concerning the validity of the debt allegedly owed by Ms. Toohey" and did not attach any such "account-level documentation" as

exhibits. (Compl. at ¶ 53). However, the Stephen Affidavit is clear on its face that it did not purport to rely on any "account-level documentation" and it certainly did not represent that such documentation was attached.

What is entirely missing from Plaintiff's complaint is an assertion that there was any materially misleading statement in the Stephen Affidavit. Plaintiff never once disputes that she incurred the debt or that PRA LLC owned the debt at the time of the Underlying Action. In other words, the Stephen Affidavit indisputably correctly stated every detail that would influence a consumer's decision to pay. See Janson v. Katharyn B. Davis, LLC, 806 F.3d 435, 438 (8th Cir. 2015). Thus, Plaintiff's contentions regarding what Ms. Stephen did or did not identify as "account-level documentation" are not material. These conclusory assertions do not amount to a viable FDCPA claim. There was no deception and any statement that was misleading in any way. For some reason Plaintiff believes that she can impose a new provision to the New York CPLR that would have required attaching or referring to "account-level documentation" in a request for the entry of a default judgment. Plaintiff does not provide any basis in law for this new standard. Wishful thinking, in and of itself, does not create a cause of action.

Lacking any substance in the facts of her individual claim, Plaintiff appears to rely on amorphous allegations concerning putative class members. Plaintiff cannot sustain her claim based on alleged conduct which supposedly impacted members of her putative class, but did not apply to her individually. See generally, Jenkins v. McCalla Raymer, LLC, 2011 U.S. Dist. LEXIS 95652, 83-84 (N.D. Ga. July 28, 2011), aff'd, 492 Fed. Appx. 968, 971 (11th Cir. 2012). Plaintiff's complaint makes general allegations concerning PRA's practices but never specifically attacks the merits of the affidavit submitted in her Underlying Action except to make a conclusory assertion that the affidavit did not "identify any account-level documentation."

The alleged absence of exhibits from the Stephen Affidavit cannot be construed as false or materially misleading for FDCPA purposes. Notably, the Stephen Affidavit does not purport to attach exhibits. Nor was there any requirement under New York law that exhibits be annexed thereto. With this lawsuit, Plaintiff is essentially attempting to retroactively create a new requirement for a civil litigant to secure a default judgment back in 2013. There was no requirement to submit "account-level documentation" to secure a default judgment. In fact, Plaintiff actually supports the proposition that there was no such requirement with her own pleading in this action – Exhibit B to her own complaint makes reference to an April 30, 2014 announcement of the New York court system's forthcoming requirements for the submission of "detailed proof" (which, at best, equates to Plaintiff's requested "account-level documentation") by the Chief Judge of the New York Court of Appeals. As PRA LLC's lawsuit was filed against Plaintiff in February 2013 and the Judgment secured in March 2013 – standards which were merely announced over a year later in April 2014 (and not implemented until months later) cannot be used as a basis to support her purported claims in this action.

Even if Plaintiff could tie the class allegations to her own situation, and be allowed to allege class-based claims as her own, those claims are insufficient to allege a claim under the FDCPA. The Stephen Affidavit *does not* suggest that it was made based upon personal knowledge of the original account-level documentation. (see e.g. Compl. at ¶¶39-40). The affidavit claims that it is based upon: (a) **personal knowledge** of PRA LLC's record keeping systems; and (b) **a review of records** transferred from HSBC to PRA:

> This affidavit is based upon *my personal knowledge of Account Assignee's [PRA, LLC's] record keeping system* and my review of Account Assignee's records, including a review of the business records transferred to Account Assignee from [HSBC] ("Account Seller"), which have become a part of and have integrated into Account Assignee's business records, in the ordinary course of business.

(Scher Decl., Exhibit "D") (emphasis added). The affidavit does not purport to represent that she conducted a review of "account-level documentation." No consumer could so badly misread the foregoing language to mean that Ms. Stephen was claiming to have personal knowledge of "account-level documentation" associated with Plaintiff's debt. There is no deception whatsoever. See e.g., Webb v. Asset Acceptance, LLC, 486 Fed. Appx. 596, at *1 (6th Cir. 2012):

> The district court properly granted summary judgment to Asset Acceptance because there was no genuine dispute as to any material fact and the Melasi affidavit and account statement were not deceptive or misleading. The Melasi affidavit was not deceptive or misleading because Melasi did not purport to have personal knowledge of whether Webb owed a debt to National City Bank. Rather, the affidavit stated that Asset Acceptance purchased Webb's account from National City Bank and that a certain sum was due on the account, "representing the charged off amount and interest."

Even if this Court were to accept Plaintiff's idiosyncratic and incorrect reading of the Stephen Affidavit at face value, her claim would still fail on materiality grounds. As the Sixth Circuit explained in Clark v. Main Street Acquisition Corp., 553 Fed. Appx. 510, 514 (6th Cir. 2014), "[t]he least sophisticated consumer understands that lenders and debt collectors will by necessity have to rely on business records that they may not have personally created, especially in an age of automated, computerized transactions. ... [A]n affiant's statement of 'personal knowledge' regarding a record originally generated by a third party that the attesting party has subsequently reviewed does not violate the [FDCPA]." Here, while Plaintiff purports to generally dispute the reliability of the data obtained by PRA from various original creditors, even she concedes in her Complaint that such information was, in fact, transferred. (Compl. at ¶ 30).

Accordingly, as Plaintiff has failed to allege any false or materially misleading representation with respect to the Stephen Affidavit, her FDCPA claim must be dismissed.

## POINT IV
## THE COMPLAINT FAILS TO STATE
## A VIABLE CLAIM FOR RELIEF UNDER THE RICO STATUTE

The second cause of action in the Complaint seeks relief based on alleged violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, specifically 18 U.S.C. §§ 1962(c) and 1962(d). In order to establish a substantive civil RICO cause of action, a plaintiff must demonstrate that the defendant participated in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Smartix Int'l Corp. v. Mastercard Int'l, LLC, 355 Fed. Appx. 464 (2d Cir. 2009). The plaintiff must also demonstrate that she sustained injury to her business or property by reason of the claimed RICO violation. Sedima, S.P.R.L. v. Imrex Company, Inc., 473 U.S. 479, 495 (1985). Thus, a plaintiff must satisfy two pleading burdens: alleging that (1) the defendant violated the substantive RICO criminal statute; and (2) the plaintiff was injured as a result. Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1983). Toohey has done neither.

A.    **The Complaint Fails to Plausibly Allege**
       **that the Malen Firm was Part of a RICO Enterprise**

As a threshold matter, Plaintiff has failed to plead a cognizable RICO enterprise. A RICO enterprise is broadly defined as "a group of persons associated together for a common purpose of engaging in a course of conduct." U.S. v. Turkette, 425 U.S. 576, 583 (1981). Its existence is "proven 'by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" First Capital Asset Mgmt., Inc. v. Satinwood Inc., 385 F.3d 159, 173 (2d Cir. 2004) (quoting Turkette, 452 U.S. at 583). In addition, an association-in-fact enterprise must have sufficient longevity to permit the associates to pursue the enterprise's purpose. Boyle v. U.S., 556 U.S. 938, 946 (2009). Most important, for the purposes of this motion, is that the RICO enterprise must be distinct from the predicate

acts in which its associates engage. That is, the enterprise must be more than the sum of its parts. Satinwood, 385 F.3d at 173.

Plaintiff's contention that PRA LLC used the Malen Firm (as well as others) as its attorneys on numerous debt collection lawsuits is not sufficient evidence to establish an association in fact. See Weaver v. James, 2011 WL 4472062, at *3 (S.D.N.Y. Sept. 27, 2011) ("To an even greater extent than the actions of a corporation's employee or agent, the litigation activities of an attorney representing clients in an eviction proceeding are not sufficiently distinct from the actions of the attorney-client "association in fact" to meet the distinctness requirement of RICO."); Smallwood v. Lupoli, 2007 WL 2713841, at *6 (E.D.N.Y. Sept. 14, 2007) ("The Court finds that the fact that Lupoli, a court-appointed fiduciary, selected the same appraiser in both transactions, or that the Universal and Plaza defendants used the same attorney, Redmond, in both transactions, does not create, by itself, a genuine issue as to the existence of an association-in-fact involving defendants. Instead, the Court finds that plaintiffs unsuccessfully attempt to demonstrate an association-in-fact through a series of conclusory allegations of which they have no meaningful evidence."); see also Cedar Swamp Holdings, Inc. v. Zaman, 487 F. Supp. 2d 444, 450 (S.D.N.Y. 2007).

Other than Plaintiff's conclusory allegations, there are no facts plead demonstrating anything other than an attorney-client relationship nor anything showing that defendants intended to participate in a scheme together and shared a common purpose to defraud her. Plaintiff has failed to establish a RICO enterprise involving the Malen Firm.

**B.     The Complaint Fails to Allege a Pattern of Racketeering Activity**

Under RICO, a "pattern of racketeering activity" consists of at least two predicate acts of racketeering activity, committed within a 10-year period, and which amount to, or pose a threat of, continued criminal activity. Satinwood, 385 F.3d at 178. This is often referred to as closed-

ended or open-ended continuity. GICC Capital Corp. v. Technology Finance Group, Inc., 67 F.3d 463, 466 (2d Cir. 1995). When a RICO claim arises from the predicate acts of mail fraud and wire fraud, it must be pled with the particularity demanded by Rule 9(b). Levoy v. Gatullo-Wilson, 170 Fed. Appx. 721, 723 (2d Cir. 2006). This requires a plaintiff who pleads acts of mail and wire fraud "to 'state the contents of the communications, who was involved, where and when they took place, and [ ] why they were fraudulent.'" Shetiwy v. Midland Credit Mgmt., 15 F. Supp. 3d 437, 445 (S.D.N.Y. 2014) (quoting Knoll v. Schectman, 275 Fed. Appx. 50, 51 (2d Cir. 2008)) (alternation in original).

In the case at bar, Toohey cites the following as purported specific instances of mail and wire fraud perpetrated by the Malen Firm:

(i)     A copy of the summons in the Underlying Action was sent to Toohey by U.S. mail on August 6, 2012 (Compl. at ¶ 78(a));

(ii)    At some point between June 6, 2012 and January 28, 2013, Malen used either interstate mail or the wires to contact PRA to request that PRA produce the Stephen Affidavit (Compl. at ¶ 78(b));

(iii)   At the direction of Malen, a member of the Monroe County Sheriff's Office sent a notice of income execution to Toohey via U.S. mail at some point between May 8, 2013 and November 10, 2014 (Compl. at ¶ 78(c));

This is woefully insufficient. First, and most importantly, the use of mail and wire alleged in the Complaint represent precisely the type of litigation activities that the federal courts have repeatedly held *can never qualify* as predicate acts for RICO purposes. See e.g., Snyder, 2014 WL 317189, at *7-8; Curtis & Assocs., P.C. v. Law Offices of David L. Bushman, Esq., 758 F. Supp. 2d 153, 171-74 (E.D.N.Y. 2010) ("join[ing] a long line of cases in finding" that "litigation activities" such as filing "false affidavits" and "perjury" are insufficient to "form the basis for RICO predicate acts."); Weaver v. James, 2011 WL 4472062, at *4; Franzone v. City of New York, 2015 WL 2139121, at *9 (E.D.N.Y. May 4, 2015); Daddona v. Gaudio, 156 F. Supp. 2d

153, 162 (D. Conn. 2000) (finding that allegations of "false documents and affidavits" at best amount to vague abuse of process or malicious prosecution claims). The Snyder decision is especially instructive because in that case, as here, the plaintiff purported to sue on behalf of a putative class of state court debtors who (allegedly) had been victimized by fraudulent litigation tactics. The Snyder court was unmoved:

> Plaintiff's claim arises from the fact of the bogus lawsuit against her, and from Defendants' alleged use of perjured documents to obtain a default judgment against her. The alleged racketeering activity is the fraudulent lawsuit....The fact that Plaintiff has captioned this action as a proposed class action, and had alleged that Defendants acted in identical fashion toward many other persons, does not, in the Court's view, permit the denial of Defendants' motion [to dismiss].

2014 WL 317189, at *8. The same should hold true in this action.

Plaintiff's claims of "bank fraud" are equally meritless. The only instance of supposed bank fraud alleged in the Complaint is found in Paragraph 81, wherein she alleges that an attorney from the Malen Firm "compelled the Monroe County Sheriff's Office to direct Ms. Toohey's employer to cause the diversion, for PRA LLC's benefit, of moneys that would otherwise flow from the employer's bank account to Ms. Toohey as wages for work performed." This is not bank fraud. To prove a violation of the federal bank fraud statute, codified at 18 U.S.C. §1344, a plaintiff must demonstrate that "the defendant, through [its] scheme, intended to victimize the bank by exposing it to loss." U.S. v. Rigas, 490 F.3d 208, 231 (2d Cir. 2007). That is, there must be an intent to deceive the bank into releasing funds (or other property) already under the bank's custody or control, such that the bank will be victimized. Id. No such allegation of intent has been leveled against the Malen Firm here (nor could there be). In fact, Plaintiff does even allege that her bank account was frozen or executed against; she simply claims that wages which possibly *would have been deposited* were garnished from her wages.

(Compl. at ¶ 81). It was Plaintiff's employer and the sheriff who transferred Plaintiff's funds – not the Malen Firm. No bank fraud has been alleged in this case.

Furthermore, even if the acts alleged in the Complaint could be construed as predicate acts under RICO, they are not so numerous, long running or capable of repetition in the future so as to "amount to or pose a continuing threat of criminal activity." In other words, there is no closed-ended or open-ended continuity. Closed-ended continuity is lacking because even if the acts alleged by Plaintiff are deemed predicate acts, they span a period of less than two years and involve such limited acts by the Malen Firm – submission of a purportedly false affidavit to a court and some amorphous allegation that the income execution by the sheriff was caused by the firm. See e.g., Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 184 (2d Cir. 2008); Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999). Likewise, there can be no open-ended continuity because, ironically, the CFPB Consent Order upon which Plaintiff relies so heavily to plead her claim actually mandated immediate changes in PRA LLC's business practices. Inasmuch as Plaintiff attempts to lump the Malen Firm and PRA LLC together as a single alleged RICO enterprise, the agreed-to changes in PRA LLC's practices necessarily confirm that there can be no open-ended continuity.

## C.  The Complaint Fails to Allege Proximately Caused RICO Damages

Lastly, Plaintiff's RICO claim must be dismissed because she has not, and can never, sufficiently allege injury to property proximately caused by a substantive RICO violation. See Sheridan v. Mariuz, 2009 WL 920431, at *7 (S.D.N.Y. Apr. 6, 2009) ("Among these additional requirements is a proximate cause showing that requires a plaintiff to allege that he or she was "injured in his [or her] business or property by reason of a violation of [18 U.S.C. § 1962]".") (internal citations omitted). "The statute's "by reason of" language "require[s] a showing that the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as

21

well," which mandates "some direct relation between the injury asserted and the injurious conduct alleged" that is not "too remote"." Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP, 806 F.3d 71, 86-87 (2d Cir. 2015) (quoting Holmes v. Sec. Inv. Prot. Corp. 503 U.S. 258, 268 (1992)).

It is undisputed that Plaintiff's wages were garnished to satisfy the Judgment in the Underlying Action (and that Plaintiff did not even dispute the garnishment). Moreover, Plaintiff has not claimed that she did not owe the underlying debt. Because Plaintiff does not dispute that she incurred the debt, she cannot establish RICO damages.

**D.    The RICO Conspiracy Claim Must be Dismissed Along With the Substantive Claim**

Plaintiff has also, technically, asserted a civil RICO conspiracy claim in her Complaint pursuant to 18 U.S.C. 1962, alleging that the Malen Firm agreed to conspire with PRA LLC to commit predicate acts. (Compl. at ¶¶ 75, 88). Courts within the Second Circuit, as well as the Court of Appeals itself, have recognized that a conspiracy claim under §1962(d) cannot survive the dismissal of the related substantive RICO cause of action. See e.g., Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1064 (2d Cir. 1996), *vacated on other grounds*, 525 U.S. 128 (1998); Kilkenny v. Law Office of Cushner & Garvey, L.L.P., 2012 WL 1638326, at *8 (S.D.N.Y. May 8, 2012). As established above, because Plaintiff's substantive RICO fails, the conspiracy claim must be dismissed as well.

**POINT V**
**PLAINTIFF HAS FAILED TO STATE A CLAIM**
**AGAINST THE MALEN FIRM FOR VIOLATING GBL § 349**

The third cause of action in the Complaint seeks relief under New York state law, specifically GBL § 349. To plead a GBL § 349 claim, a plaintiff must allege that the defendant engaged in (1) consumer-oriented conduct (2) that was materially misleading; and (3) that the plaintiff suffered injury as a result. Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 490

(2d Cir. 2014) (quoting <u>Stutman v. Chemical Bank</u>, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 895 (N.Y. 2000)).

Here, Plaintiff's GBL § 349 claim fails in every way possible. First, conduct by a party in the course of litigation (or any other legal proceeding), as a matter of law, is not consumer-oriented activity within the ambit of GBL § 349. <u>See</u> <u>DirecTV, Inc. v. Rowland</u>, 2005 WL 189722 (W.D.N.Y. Jan. 22, 2005) (holding that defendants' alleged mailing of letters threatening litigation fell outside the scope of § 349 because such conduct was not consumer-oriented). As the Federal Trade Commission has stated, in the context of the Fair Credit Reporting Act, "*litigation is not a 'business transaction' involving the consumer.*" 16 C.F.R. Part 600, 1990 WL 342991, at *26 (May 4, 1990) (emphasis added).

Moreover, disputes arising from a private contract dispute does not fall within the ambit of GBL §349. New York law is clear that "private contract disputes which are unique to the parties do not fall within the ambit of [GBL § 349(b)]." <u>See</u> <u>Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.</u>, 85 N.Y.2d 20, 24-25 (N.Y. 1995); <u>New York Univ. v. Cont'l Ins. Co.</u>, 87 N.Y.2d 308, 321 (N.Y. 1995) (striking § 349 claim over policy coverage and processing of an insurance claim). Because Plaintiff failed to plead facts sufficient to establish "consumer-oriented" conduct and failed to show that the Malen Firm engaged in wrongs "against the consuming public," the § 349 claim must be dismissed.

Even if Plaintiff could establish that GBL § 349 was applicable to her alleged facts, she has failed to identify any materially deceptive or misleading conduct on the part of the Malen Firm. At the outset, Plaintiff's entire case is anchored upon an affidavit that was not signed by anyone affiliated with the Malen Firm. Thus, even if there was something "misleading" in the affidavit it was not the doing of the Malen Firm and, thus, there can be no GBL claim against the Malen Firm. Moreover, the alleged wrongful conduct must be material. Material statements or

omissions are limited to those "that involve *information that is important to consumers* and, hence, likely to affect their choice of, or conduct regarding, a product." Bildstein v. Mastercard Int'l Inc., 239 F. Supp. 2d 410, 414 (S.D.N.Y. 2004) (quoting Novartis Corp. v. F.T.C., 223 F.3d 783, 787 (D.C. Cir. 2000) (emphasis added)). The Legislature modeled § 349 after the antifraud provision (Section 5) of the Federal Trade Commission Act ("FTCA"). Oswego, 85 N.Y.2d at 25.[2]

As discussed in Point III.C, supra, the Stephen Affidavit submitted in support of PRA LLC's application for default judgment against Plaintiff was not misleading and certainly wasn't *materially* misleading. In fact, it was indisputably correct about every piece of information that could affect a reasonable consumer's decision regarding whether or not to pay the debt at issue. Plaintiff has failed to allege that she was *personally* misled by the Stephen Affidavit. "[N]umerous courts have held that in order to have been injured by the defendant's deceptive act, a plaintiff must have been personally misled or deceived." LaCourte v. JPMorgan Chase & Co., 2013 WL 4830935, at *10 (S.D.N.Y. Sept. 4, 2013); see also Mascoll v. Strumpf, 2006 WL 2795175, at *9 (E.D.N.Y. Sept. 26, 2006); Solomon v. Bell Atl. Corp., 9 A.D.3d 49, 52, 777 N.Y.S.2d 50, 55 (1st Dep't 2004). As Plaintiff has made no such allegation here, her GBL § 349 claim must be dismissed as a matter of law.

## POINT VI
## THE COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT

Plaintiff's fifth cause of action is for unjust enrichment. (Compl. at ¶¶ 99-102). To plead a legally cognizable claim for unjust enrichment, a plaintiff must allege sufficient facts to show that: (1) the defendant was enriched; (2) at the plaintiff's expense; and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered. Mandarin

---

[2] Section 5 of the FTCA, 15 U.S.C. 45(a) provides: "the term 'unfair or deceptive acts or practices' includes such acts or practices involving foreign commerce that (i) cause or are likely to cause reasonably foreseeable injury within the United States; or (ii) involve material conduct occurring within the United States."

Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 182, 919 N.Y.S.2d 465, 471 (N.Y. 2011).

This final claim fares no better than its predecessors. Plaintiff alleges that she is entitled to recover against the Malen Firm because it supposedly gained monetary benefits through the enforcement of the Judgment, to which neither the Malen Firm nor PRA LLC would otherwise have been entitled. (Compl. at ¶¶ 100-01). Once again, Plaintiff overlooks the inconvenient, undisputed facts. As previously noted, Plaintiff never alleges that she did not owe the debt at issue in the Underlying Action and, thus, is precluded from claiming unjust enrichment. See e.g. Zutel v. Wells Fargo Bank, N.A., 2014 WL 4700022, at *7 (E.D.N.Y. Sept. 22, 2014) ("First, plaintiffs have failed adequately to allege that the original mortgage or the [loan modification agreement] is invalid. Under New York law, a plaintiff may not recover for unjust enrichment where a valid contract exists . . . Second, since plaintiffs do not dispute the fact that they remain liable for their mortgage debt, they have failed to allege an injury for which equity and good conscience require restitution.") (citations omitted). Simply put, justice was served in the Underlying Action. There is no unjust enrichment claim.

## CONCLUSION

For all the foregoing reasons, the Malen Firm respectfully requests that this Court grant its motion and issue an order dismissing Plaintiff's claims against it pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: Woodbury, New York
     December 23, 2015

**KAUFMAN DOLOWICH & VOLUCK, LLP**

By: _____

Brett A. Scher, Esq.
Adam M. Marshall, Esq.
*Attorneys for Defendant*
*Malen & Associates, P.C.*
135 Crossway Park Drive – Suite 201
Woodbury, New York 11797
(516) 681-1100