UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARY ELLEN TOOHEY,                              Case No. 15-CV-8098 (GBD)
individually and on behalf of all other similarly
situated,

                                Plaintiff,

    -against-

PORTFOLIO RECOVERY ASSOCIATES, LLC,
PRA GROUP, INC., MALEN & ASSOCIATES, P.C.

                           Defendants.
------------------------------------------------------------------X


## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MALEN & ASSOCIATES, P.C.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**KAUFMAN DOLOWICH & VOLUCK, LLP**
*Attorneys for Defendant*
*Malen & Associates, P.C.*
Brett A. Scher, Esq.
Adam M. Marshall, Esq.
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
Phone: (516) 681-1100
Fax: (516) 681-1101
bscher@kdvlaw.com
amarshall@kdvlaw.com

**PRELIMINARY STATEMENT**

Toohey's opposition never once addresses the key failings of her case that distinguish it from those cases that she cites as precedent: (a) she has **never disputed the validity of the debt** that the defendants sought to collect from her; (b) she was **properly served** with the complaint in the Underlying Action; (c) **she elected to ignore the Underlying Action;** (d) the Stephen Affidavit was **materially correct;** and (e) a **judgment was properly entered** against her and to this date has **not been vacated**. Instead, she simply relies on outlandish allegations, made solely by her counsel, that defendants engaged in a "no evidence judgment scheme." Without citing to any law or statute, Toohey relies on a bootstrapping argument that New York courts required "account level documentation" to be submitted to secure a default judgment and then claiming that the Stephen Affidavit was misleading because it failed to attach said documentation. Her claims must be dismissed.

**TOOHEY'S RICO, GBL §349 AND UNJUST ENRICHMENT CLAIMS DO NOT SURVIVE APPLICATION OF THE ROOKER-FELDMAN DOCTRINE**

Toohey asserts that the *Rooker-Feldman* doctrine is inapplicable here because: (a) she is seeking monetary damages, rather than nullification of the Judgment in the Underlying Action; and (b) her alleged injuries were caused by the Malen Firm's conduct in procuring the Judgment, rather than by the Judgment itself. (Opp. at 37). Toohey incorrectly relies on the decision in Sykes v. Mel S. Harris & Associates, 757 F. Supp. 2d 413, 429 (S.D.N.Y. 2010) to support her argument. In the first instance, the Sykes decision spent all of one paragraph addressing Rooker-Feldman with no substantive analysis of whether it was applicable to bar the causes of action sought to be barred in this action. More importantly, the underlying state court judgments that had been entered against the debtors-plaintiffs in Sykes had **already been vacated** by the time the federal lawsuit had commenced (and the defendants moved to dismiss that federal lawsuit). Id. at 429 (S.D.N.Y. 2010) ("[A]ll plaintiffs have had the default judgments against them vacated or discontinued."). As such, there was nothing for the federal court to nullify, either directly or indirectly, through an award of damages in the federal lawsuit (and, thus, the Sykes Court would not be violating Rooker-Feldman). Here, Toohey clearly

1

seeks, *inter alia*, "actual damages" and "full restitution . . . to the extent that Defendants have collected monies upon the purported debts and/or default judgments entered," (Compl., "Wherefore" Clause) and, thus clearly seeks to undermine the Judgment. Second, the plaintiffs in Sykes alleged that the default judgments against them had been obtained through "sewer service." Id. at 419. Without proper service, the underlying judgments at issue in Sykes were jurisdictional nullities and could not be afforded preclusive effect, in direct contrast to this lawsuit. See Vaccarino v. Allstate Ins. Co., 270 A.D.2d 411 (2d Dep't 2000).

Here, however, Toohey has not: (a) challenged the service of the complaint against her in the Underlying Action (i.e., there was no "sewer service" here); nor (b) vacated the Judgment entered against her in the Underlying Action. As the New York Court of Appeals has held, the:

> "failure to submit the proof required by CPLR 3215(f) should lead a court to deny an application for a default judgment, but a court that does not comply with this rule has merely committed an error—it has not usurped a power it does not have. The error can be corrected by the means provided by law—i.e., by an application for relief from the judgment pursuant to CPLR 5015. It does not justify treating the judgment as a nullity."

See Manhattan Telecom. Corp. v. H&A Locksmith, Inc., 21 N.Y.3d 200, 203-04 (N.Y. 2013). In the case at bar, the Judgment is valid and only if it is vacated pursuant CPLR §5015, can it be collaterally attacked in federal court. Indeed, the New York courts have a specific mechanism, CPLR §5015(c), to invalidate default judgments "obtained by fraud, misrepresentation, illegality, unconscionability, lack of due service, violations of law, or other illegalities" en masse – the proper approach is not a federal class action. See CPLR §5015(c). Because the Judgment against Toohey in the Underlying Action has not been nullified, nor considered a jurisdictional nullity and because Toohey's only alleged injuries on her RICO, GBL §349 and unjust enrichment claims flow from the Judgment (and those claims that depend on a finding of *actual injury*) they must be dismissed under *Rooker-Feldman*.

### TOOHEY CANNOT CIRCUMVENT RES JUDICATA

Toohey's arguments with respect to *res judicata* are even less persuasive. Ignoring the cases cited by the Malen Firm in its moving papers, Toohey posits that "res judicata is inapplicable where it is alleged

2

that the underlying judgment was *obtained through fraud*." (Opp. at 38) (emphasis added). Toohey cites Bell v. Town Bd. of Pawling, 146 A.D.2d 729, 730, 537 N.Y.S.2d 214, 215 (2d Dep't 1989) for the proposition that a plaintiff can overcome *res judicata* by alleging "fraud in the very means by which the judgment was procured." (Opp. at 39). As Judge Cardozo explained in Fuhrmann v. Fanroth, 254 N.Y. 479, 482 (N.Y. 1930), the case relied upon in Bell, such fraudulent procurement refers to the use "of some covinous device, for illustration, whereby [the now plaintiff] **was robbed of the opportunity** to uncover her grievance and expose it to the court." (emphasis added). In modern practice, this is known as "extrinsic" fraud, and it typically involves threats of force or misrepresentations that an action would be discontinued. See In re Richmond, 513 B.R. 34, 40 (E.D.N.Y. Bankr. 2014) (collecting cases). To justify vacating a judgment on the ground of fraud, the fraud complained of must have been "extrinsic," that is, practiced in the very act of obtaining the judgment in such a way that a party was prevented from fully and fairly litigating the matter. Citimortgage, Inc. v. Guarino, 42 Misc. 3d 962, 966, 978 N.Y.S.2d 646, 650 (Sup. Ct. 2014) (citations omitted). Toohey makes **no allegation that she was prevented from litigating the Underlying Action.** In fact, she concedes, that she simply **ignored** the Underlying Action and did not challenge PRA LLC's evidence as to the existence of her debt.

Even if taken as true, Toohey's claim that defendants submitted a misleading affidavit of merit in the Underlying Action alleges only an "intrinsic" fraud which can only be addressed in the state courts in a motion to vacate pursuant to CPLR 5015(a)(3). Toohey commenced this collateral attack on the Judgment because she clearly will never be able to set aside the Judgment in State Court pursuant to CPLR 5015(a)(3) as she has "sat on her hands" for two years and does not dispute the debt. Thus, she does not have a reasonable excuse for defaulting in the Underlying Action nor does she have a meritorious defense in the Underlying Action. See Bank of New York v. Stradford, 55 A.D.3d 765 (2d Dep't 2008).

In apparent desperation, Toohey argues that the fraud exception to *res judicata* should apply (Opp. 39). To invoke the exception, Toohey must show that the alleged fraudulent scheme is "greater in scope than the issues determined in the prior proceeding" and that "the [instant] cause of action did not arise out of the factual transaction which was the subject matter of [the prior] action." Aghaeepour v. N.

3

Leasing Sys., Inc. 2015 WL 7758894, at *8 (S.D.N.Y. 2015) (citations omitted). Toohey has not alleged a scheme greater than the collection of debt nor can she ever plead that the current claims do not arise out of the same facts at issue in the Underlying Action, thus the exception does not apply.

## TOOHEY CANNOT STATE A TIMELY OR PLAUSIBLE FDCPA CLAIM

**A.     The Statute of Limitations on Toohey's Claim Expired Prior to Filing this Action**

There is no dispute that the Stephen Affidavit – the lynchpin of Toohey's alleged claim – was submitted to the state court in February 2013 and this lawsuit was not filed until almost three (3) years later, on October 14, 2015. Toohey first relies on equitable tolling, citing to Coble v. Cohen & Slamowitz, LLP, 824 F. Supp. 2d 568 (S.D.N.Y. 2011), contending that "[she] could not have known of Defendants' use of fraudulent affidavits until the CFPB announced the findings of its investigation of PRA." (Opp. 19). Coble involved allegations of "sewer service," with the plaintiffs in that case claiming that they never received timely notice of the debt collection lawsuits against them. 824 F. Supp. 2d at 569-70. Here, by contrast, there is no question that Toohey knew about the Underlying Action all along, having been indisputably served with the summons and complaint **in July 2012**. (Scher Decl., Exhibit "C"). Toohey also received notice of the Judgment against her in May 2013 when the Monroe County Sheriff began garnishing her wages. (Scher Decl., Exhibit "F"). Such notice is incompatible with the exercise of due diligence by a plaintiff that is required for invoking equitable tolling. See Sykes, 757 F. Supp. 2d at 422);[1] Shetiwy v. Midland Credit Mgmt., 980 F. Supp. 2d 461, 474 (S.D.N.Y. 2013).

Toohey argues that this Court should excuse her complete lack of diligence, claiming that if she had hypothetically bothered to contest the Underlying Action, she would not have been able to detect the alleged defects in the Stephen Affidavit without the aid of the CFPB Consent Order. (Opp. 19).

---

[1] It is particularly telling that Toohey works so hard to analogize her case to the allegations in the Sykes case but then completely ignores the Sykes Court's analysis of equitable tolling. Sykes specifically held that a plaintiff who brings an FDCPA claim arising from a underlying debt collection lawsuit is "on notice" of her claims from the receipt of the summons and complaint. 757 F.Supp.2d at 422.

4

This contention is flatly undermined by simple logic and Toohey's own theory of FDCPA liability. First, if Toohey did not owe the debt claimed by PRA LLC in the Underlying Action, why would she need to wait for the CFPB Consent Order and its purported findings about the validity of affidavits signed by PRA LLC employees? If she did not owe the debt, she did not need the CFPB to tell her that. Her claimed lack of knowledge is simply not plausible. Moreover, even in her opposition papers, Toohey continues to claim that the Stephen Affidavit, **on its face,** violated the FDCPA because, as she claims (without specifics), the language contained therein is misleading. (Opp. at 12-13). Taking this allegation as true, her FDCPA claim was *immediately detectable* by Toohey.

Toohey also asks that the "discovery rule" be applied, claiming that she could not have learned of the existence of her FDCPA claim prior to the release of the CFPB Consent Order. (Opp. 20-21). Courts within this Circuit have consistently declined to impose the discovery rule in FDCPA cases. See e.g., Vincent v. Money Store, 304 F.R.D. 446, 458 n.9 (S.D.N.Y. 2015); Snyder v. U.S. Equities Corp., 2014 WL 317189, at *7-8 (W.D.N.Y. 2014); Thompson v. Ocwen Fin. Corp., 2013 WL 4522504, at *4 (D. Conn. 2013). In any event, using a discovery rule would not help Toohey. As previously discussed, any alleged deficiency in the Stephen Affidavit was immediately discoverable on its face and, thus, the discovery rule does not apply. See Magnum v. Action Coll. Serv., Inc., 575 F.3d 935, 939 (9th Cir. 2009).

Lastly, Toohey argues that her FDCPA claim should be deemed timely by virtue of the "continuing violation doctrine," claiming that a Satisfaction of Judgment was not filed with the Monroe County Clerk until November of 2014. (Opp. 22). Toohey's reliance on the filing of the Satisfaction of Judgment as a trigger date is completely misplaced. Filing a Satisfaction of Judgment is not an attempt to collect a debt under the FDPCA. Moreover, the undisputed evidence conclusively establishes that the Judgment against Toohey was fully satisfied by **September 23, 2014** (Scher Decl., Ex. "F" p. 3). See e.g., Conklin v. Jeffrey A. Maidenbaum, Esq., 2013 WL 4083279, at *6 (S.D.N.Y. Aug. 13, 2013) ("[O]nce a debt is extinguished, there is no debt, and 'any action by a former debt-

5

collector, however improper, cannot be deemed to be 'in connection' to a present debt collection proceeding."). Thus, even assuming the continuing violation theory applied,[2] the clock started to run no later than September 23, 2014. Toohey's FDCPA claim is untimely.

**B.   The Stephen Affidavit was Never Directed at Toohey**

In her opposition, Toohey all but ignores the fact that the Stephen Affidavit was directed to the court in the Underlying Action, not her. She simply declares that the Malen Firm's argument concerning the consumer/third-party distinction "has been flatly rejected in this Circuit." (Opp. at 15). As noted in the Malen Firm's moving papers, while the Second Circuit has yet to expressly rule on whether communications directed to court personnel (and not the debtor) are beyond the scope of the FDCPA,[3] it has endorsed the premise in *dicta* on multiple occasions. (Malen Memo at 12). As Toohey has not plead that she was deceived or mislead by the Stephen Affidavit, she has no viable FDCPA claim.

**C.   The Stephen Affidavit was Materially Accurate**

Toohey also falls short in her efforts to portray the Stephen Affidavit as misleading. Toohey now suggests that the Stephen Affidavit was worded in such a way that could lead an unsophisticated consumer to incorrectly conclude that Ms. Stephen herself reviewed, attached, and had "personal knowledge" of "account-level documentation" concerning Toohey's debt when, in fact, that was not the case. (Opp. at 12-13). This argument has no shortage of flaws. Despite Toohey's continued assertions to the contrary, the Stephen Affidavit makes no reference to attaching or reviewing "account-level documentation" or Ms. Stephen having "personal knowledge" of anything beyond PRA LLC's own record keeping system. (Scher Decl., Ex. "D"). Toohey continues to rely on her pronouncement that the Stephen Affidavit was misleading because it did not attach (or purport to attach) any exhibits (i.e., the "account-level documentation"). Yet Toohey still fails to cite to any case law or directive from the New York courts that required a party seeking a default judgment in a debt collection case to review or include "account level

---

[2] Courts within this Circuit have repeatedly refused to apply the continuing violation doctrine to FDCPA claims. See e.g., Oliver v. U.S. Bancorp, 2015 WL 4111908, at *2 (S.D.N.Y. July 8, 2015); Craig v. Saxon Mortg. Servs., Inc., 2015 WL 171234, at *9 (S.D.N.Y. Jan. 13, 2015).

[3] Despite Toohey's suggestions to the contrary, the Second Circuit did not hold that affidavits of merit submitted to a court are actionable under the FDCPA in Sykes v. Mel S. Harris & Associates LLC, 780 F.3d 70 (2d Cir. 2015). To the contrary, the Second Circuit declined to rule on the issue, just as the District below did as well. Id. at 96-97.

documentation." Thus, the Complaint fails to plausibly allege that the Stephen Affidavit could be interpreted as false. Id. Moreover, none of the alleged ambiguities in the Stephen Affidavit can be deemed material. Even if the Stephen Affidavit could be construed as suggesting Ms. Stephen had personal knowledge of "account level documentation" associated with Toohey's debt, the resulting technical falsity would still not be actionable under the FDCPA:

> [P]laintiffs allege that Debt Buyer Defendants filed complaints and affidavits without "personal knowledge" of the underlying debt. But under Second Circuit law, court filings that do not "mislead a putative-debtor as to the nature and legal status of the underlying debt, or . . . impede a consumer's ability to respond to or dispute collection" do not violate the FDCPA.

Shetiwy v. Midland Credit Mgmt., 15 F. Supp. 3d 437, 447 (S.D.N.Y. 2014) (citations omitted). As Toohey's Complaint fails to affirmatively allege that she did not owe the debt alleged in the Stephen Affidavit, Toohey cannot plausibly claim that she was materially misled by it. See Janson v. Katharyn B. Davis, LLC, 806 F.3d 435, 438 (8th Cir. 2015) ("[A]bsent an allegation that he did not actually owe rent, [Plaintiff] has not plausibly alleged that the defendant's practice [of swearing to an affidavit without person knowledge of the facts] misled the state court in any meaningful way."). Nor can she, as discussed above, plausibly allege that the Stephen Affidavit "prevented" her from disputing the debt.

## TOOHEY CANNOT STATE A PLAUSIBLE RICO CLAIM

Toohey badly overreaches in defending her civil RICO claim. She first argues that her Complaint establishes an "association-in-fact" enterprise between PRA LLC and the Malen Firm because this case is the same as Sykes. That is not accurate. In Sykes, the plaintiffs claimed that the defendant debt buyer (Leucadia) and the defendant debt collection law firm (Mel S. Harris and Associates LLC) had entered into *joint ventures* to purchase the portfolios of debts that were ultimately subjected to litigation. 757 F. Supp. 2d at 419. Thus, the Mel Harris firm was alleged to be far more than just the attorneys for the debt buyer; it was alleged to be a stakeholder in the debts. Moreover, the affidavits of merit targeted in Sykes were signed by a law firm employee. Id. at 420. No such claims have been made here (with Toohey acknowledging that the Stephen Affidavit was signed by a PRA LLC employee). Toohey's reliance on Arons v. Lalime, 3 F. Supp. 2d 314 (W.D.N.Y. 1998) is also

7

misplaced. In fact, <u>Arons</u> actually confirmed that providing legal services generally does not constitute participation in a RICO enterprise. <u>Id</u>. at 321. The <u>Arons</u> Court denied the defendant attorney's motion because of the attorney's unexplained creation of a "roll program" -- the operative scheme of the RICO enterprise in the case – in his attorney trust account and had allowed two of the co-defendants to act as managers of the "roll program." Likewise, the attorney in Arons took $40,000 from the "roll program" with no tie to the actual performance of legal services (having performed only 8½ hours of legal work). <u>Id</u>. at 322. <u>Arons</u> is not akin to the facts at bar. Toohey has alleged nothing more than an attorney-client relationship between the Malen Firm and its client. Making the conclusory assertions that the Malen Firm "manage[d] the litigation" and worked on a contingency fee basis does not offer any plausible evidence of an association in fact. Attorneys are always tasked with managing litigation (that is what attorneys do) and contingency fees are hardly evidence of a RICO enterprise.

The problems for Toohey's RICO claim continue to mount with their attempt to establish the requisite predicate acts. Toohey contends that the Malen Firm committed six predicate acts of mail fraud – yet looking at the Complaint, Toohey merely identifies one "act" by the Malen Firm – "attest[ing] that a copy of the summons in the action against Ms. Toohey was sent to Ms. Toohey by U.S. mail on August 6, 2012." (<u>Id</u>. at 29). This is clearly not an act of mail fraud. Toohey relies heavily on the court's holding in <u>Mayfield v. Asta Funding</u>, 95 F. Supp. 3d 685 (S.D.N.Y. 2015) to bolster her mail fraud argument. (Opp. 27). The critical distinction is that the debtor-plaintiffs in <u>Mayfield</u> **affirmatively alleged that they did not owe the debts at issue**. <u>Id</u>. at 691. Thus, the court's finding in <u>Mayfield</u> that the plaintiffs' complaint successfully plead viable predicate RICO acts was based upon **multiple** mailings by the defendants which were deemed (by virtue of the <u>Mayfield</u> plaintiffs' contention of not owing the debt) to be "false or misleading" including "fraudulent affidavits of facts," "fraudulent affidavits of service," and "falsely 'verified' complaints.'" <u>Id</u>. at 697. This is something Toohey cannot plead as **she does not dispute the validity of the debt** at issue and cannot point to actual mail fraud in this case. As Toohey only relies on routine litigation filings and has not

8

denied the validity of the debt, this Court should utilize the majority view and hold that routine litigation activities are not RICO predicate acts.[4]

Toohey's arguments concerning the predicate act of bank fraud are equally meritless. Toohey continues to assert that she has properly plead a violation of the bank fraud statute based on the garnishment of her wages **by her employer** to satisfy the Judgment. (Opp. 28). Yet 18 U.S.C. § 1344(2) specifically requires that the defendant execute a scheme or artifice to obtain moneys under the custody or control of a *financial institution*. There was no financial institution here, just Toohey's employer. (Compl. at ¶81). That alone renders the bank fraud statute inapplicable. Toohey's contention that some courts have allowed bank fraud claims to be maintained by non-bank plaintiffs is a red herring. The issue is not whether it is appropriate to allow a non-bank plaintiff to bring a RICO claim based on bank fraud but whether such a claim can be sustained when there is no actual bank fraud alleged.

Toohey's claim also falls apart with respect to the issue of a pattern of racketeering activity. She concedes that there is no open-ended continuity in light of the CFPB Consent Order. Her attempts to argue closed-ended continuity fail. Toohey contends that she should be allowed to rely on facts concerning other "victims" to establish the fraudulent scheme. (Opp. at 31). The premise that Toohey cites is not incorrect. However, what Toohey fails to appreciate is the distinction between being allowed to rely on facts pertaining to third parties and **actually pleading** those facts. In the case relied upon by Toohey to support closed-ended continuity, Naples v. Stefanelli, No. 12-CV-4460, 2015 WL 541489 (E.D.N.Y. Feb. 7, 2015), the plaintiffs at least attempted, unsuccessfully, through supporting declarations, to plead acts and injury to third parties sufficient to show the ongoing fraudulent scheme. Id. at *12-13. In the case at bar, Toohey has plead no specific facts concerning any other purported

---

[4] See FindTheBest.com, Inc. v. Lumen View Tech. LLC, 20 F. Supp. 3d 451, 460 (S.D.N.Y.2014); Snyder, 2014 WL 317189, at *7-8 (W.D.N.Y. Jan. 28, 2014); Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq., 758 F. Supp. 2d 153, 171-172 (E.D.N.Y. 2010).

9

victim of a fraudulent scheme. Her vague allegations that the fraudulent scheme impacted thousands of unidentified individuals, with nothing more, cannot sustain her RICO claim.

Finally, Toohey has failed to articulate any proximately caused damages with respect to her RICO claim. She argues in her opposition that "it was only through submitting fraudulent affidavits that Defendants were able to get their hands on [Toohey]'s hard-earned money." (Opp. 33). Again, however, Toohey has failed to plausibly allege that the Stephen Affidavit was fraudulent, has not disputed that she owed the debt, and cannot argue that the Judgment was entered without jurisdiction. This severs the causal link between any claimed injury and the alleged RICO violations. Sykes, 780 F.3d at 91. And, as was true of her FDCPA claim, Toohey cannot use the claimed injuries of other purported "class members" to overcome her own lack of proximately caused RICO damages. See DDR Constr. Servs. v. Siemens Indus., 770 F. Supp. 2d 627, 654 (S.D.N.Y. 2011). Accordingly, the RICO claim should also be dismissed as a matter of law.

## TOOHEY CANNOT RECOVER UNDER NEW YORK STATE LAW

Toohey's arguments with respect to her state law GBL §349 and unjust enrichment claims should be rejected for many of the reasons already discussed. Toohey argues that the Malen Firm's conduct was materially misleading for GBL §349 purposes because it was likely to mislead a reasonable consumer to believe that he or she owed money when, in fact, they did not. (Opp. 35). Toohey, however, cannot plausibly make such an assertion as she concedes that she owed the debt at issue to PRA LLC. She also does not dispute that she was not personally mislead or deceived by the Stephen Affidavit. Likewise, there is no dispute that the Stephen Affidavit was not signed by anyone from the Malen Firm, thus there can be no liability for the Malen Firm on these state law claims.

## CONCLUSION

The Malen Firm respectfully requests that this Court dismiss Toohey's claims pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: Woodbury, New York
February 3, 2016

                        **KAUFMAN DOLOWICH & VOLUCK, LLP**

By: _____

Brett A. Scher, Esq.
Adam M. Marshall, Esq.
*Attorneys for Defendant*
*Malen & Associates, P.C.*
135 Crossway Park Drive – Suite 201
Woodbury, New York 11797
(516) 681-1100

4811-6326-1485, v. 1