UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

MARY ELLEN TOOHEY, *individually and on behalf of all others similarly situated*,

                                      Plaintiff,

-v-

PORTFOLIO RECOVERY ASSOCIATES, LLC; PRA GROUP, INC.; MALEN & ASSOCIATES, P.C.,

                                      Defendants.

------------------------------------x

OPINION

15-cv-8098 (GBD)

GEORGE B. DANIELS, United States District Judge:

On October 14, 2015, Plaintiff Mary Ellen Toohey filed this putative class action against Defendants Portfolio Recovery Associates, LLC and PRA Group, Inc. (together, "PRA"), and Malen & Associates, P.C. ("Malen") (collectively, with PRA, "Defendants"). She alleges that PRA, a debt-buying company, and Malen, its law firm, orchestrated a scheme to fraudulently obtain and enforce consumer debt judgments against her and similarly situated individuals in state courts. Specifically, she alleges that Defendants brought and maintained consumer debt lawsuits without having sufficient evidence to prove the claimed debts, and filed false, deceptive and misleading affidavits of merit in support of their claims to obtain default judgments. Toohey claims this conduct violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, the Racketeer Influences and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and New York State General Business Law ("GBL") § 349. She also claims Defendants were unjustly enriched by virtue of their alleged misconduct. (Class Action Complaint ("CAC"), (ECF No. 1), at ¶¶ 57-102.)

1

Pending before this Court are Defendants' motions to dismiss the CAC pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6). Defendants' motions to dismiss the RICO, GBL § 349 and unjust enrichment causes of action are GRANTED. Defendants' motions to dismiss the FDCPA cause of action are DENIED.[1]

## I. Background[2]

### A. Consent Order

On September 8, 2015, the Consumer Financial Protection Bureau ("CFPB") issued a "Consent Order" detailing its review of PRA's practices regarding its purchase of consumer debts, and subsequent collection efforts including the filing of lawsuits against consumers. (Consumer Financial Protection Bureau Consent Order ("Consent Order"), (ECF No. 1-1), at 1, 60.) In the CFPB's opinion, PRA's practices violated, *inter alia*, the FDCPA.[3] (*Id.* at ¶¶ 91-114.) PRA

---

[1] Portfolio Recover Associates, LLC is either directly or indirectly, a wholly owned subsidiary of PRA Group, Inc. (*Id.* at ¶ 16.) On December 15, 2015, Toohey filed a notice, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), voluntarily dismissing without prejudice her claims against PRA Group, Inc.

[2] The facts alleged in the CAC are assumed true for purposes of this motion.

[3] Specifically, among the CFPB's findings and conclusions were the following:

> 100. In numerous instances . . . , in connection with collecting or attempting to collect Debt from Consumers, in affidavits filed in courts across the country, [PRA] represented directly or indirectly, expressly or by implication, that:
>    a. PRA affiants had reviewed account-level documentation from the original creditor corroborating the consumer's debt;
>    b. Documents attached to affidavits were specific to the consumer; or
>    c. PRA affiants were familiar with the content of account agreements.
> 101. In truth and in fact, in numerous instances:
>    a. PRA's affiants had not reviewed account-level documentation from the original creditor corroborating the consumer's debt;
>    b. Documentation attached to affidavits was not specific to the consumer; or

2

consented to the issuance of the Consent Order without admitting or denying any of its findings of fact or conclusions of law. (*Id.* at ¶ 2.) Nevertheless, it agreed to comply with the requirements and prohibitions set forth in the Consent Order, and to pay more than $27 million combined in redress to restitution-eligible consumers and in civil money penalties. (*Id.* at ¶¶ 136, 145, 152.)

Toohey filed the CAC approximately five weeks after the issuance of the Consent Order. The CAC's allegations are partially based on the CFPB's findings.[4]

B. *PRA's Debt-Buying and -Collection Process*

PRA purchases debt in bulk. (CAC at ¶ 30; Consent Order at ¶ 24.) Although the seller typically provides PRA with an electronic spreadsheet containing certain account-specific information, such as the consumer's name, social security number, and the current balance on the debt, (CAC at ¶ 30; Consent Order at ¶ 27), the debt purchase agreements often specify this information might be inaccurate, incomplete, or otherwise unreliable, (*see* CAC at ¶ 31; Consent Order at ¶ 29). Additionally, some purchase agreements limit PRA's ability to acquire account-

---

> c. PRA affiants were not familiar with the content of account agreements because, for example, the account agreements at issue were no longer available for affiants to review.
> 102. The representations set forth in Paragraph 100 are false or misleading and constitute deceptive acts or practices in violation of Sections 807 and 807(1) of the FDCPA, 15 U.S.C. §§ 1692e, 1692e(10).

(*Id.* at ¶¶ 100-02.)

[4] On a motion to dismiss, this Court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing suit." *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citing *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)). This Court treats the Consent Order, as well as the allegations contained within the CAC which are based upon the Consent Order, as allegations made "upon information and belief." *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 180 (2d Cir. 2015). The allegations in the CAC, although overlapping with the Consent Order, were made directly by Toohey and signed by her counsel consistent with the requirements set forth in Federal Rule of Civil Procedure 11(b)(3). Thus, this Court declines PRA's invitation to exercise its discretion to strike these allegations under Federal Rule of Civil Procedure 12(f). *See id.*

level (*i.e.*, primary source) documentation, in which case its ability to confirm the accuracy of the information in the spreadsheet is impaired. (*See* CAC at ¶ 33; Consent Order at ¶ 31.)

C. *The Alleged Wrongdoing*

The CAC alleges that, despite knowing that the information pertaining to a particular debt might be inaccurate, and that it often will be unable to secure the documentation to prove the existence and amount of the debt owed, PRA nonetheless filed lawsuits in state and local courts to collect on the debts it had purchased. (CAC at ¶ 35.) If the alleged debtor appeared to defend against the suit, and demonstrated that the amount claimed was incorrect, PRA and the law firm would amend the complaint by reducing the amount of the claimed debt by the amount the consumer contended was already paid. (*Id.* at ¶ 38.) If, however, the debtor failed to defend against the action, PRA would file a motion for default judgment. (*See id.* at ¶ 39.) Approximately 10% of alleged debtors ever appear to defend against collection actions filed by PRA, so approximately 90% of PRA's actions lead to default judgments. (*Id.* at ¶ 38.)

To secure a default judgment, PRA must demonstrate that it has firsthand knowledge of the account-level documentation demonstrating that the person from whom collection is sought owes the debt and amount claimed. (*See id.* at ¶ 39.) Accordingly, with each default judgment motion, PRA submits an affidavit sworn to by a PRA employee in which the employee asserts personal knowledge of the claimed debt and amount (*i.e.*, an "affidavit of merit"). (*Id.*; Consent Order at ¶ 49.) The "boilerplate language" included in these affidavits of merit provide, *inter alia*, that:

> [t]his affidavit is based upon my **personal knowledge** . . . and **my review** of . . . the business records transferred to [PRA] from [the entity that sold PRA the portfolio containing the subject account].
>
> . . .

4

> According to the records transferred to [PRA] from [the seller] . . . there was due and payable from [the consumer-defendant] to [the seller] the sum of [the alleged debt amount] . . . with there being **no known un-credited payments**, counterclaims or offsets against the said debt as of the date of the sale.

(CAC at ¶ 39 (emphasis and alterations in original); *see* Consent Order at ¶ 50.)

The CAC contends these assertions are false, deceptive, or misleading because PRA's affiants do not personally review any account-level documentation, but simply relies on the unreliable, hearsay information contained in the original spreadsheet provided by the sellers. (CAC at ¶ 40; Consent Order at ¶¶ 50-51, 100-02.)

Malen is a New York law firm that has maintained thousands of debt-collection lawsuits on PRA's behalf. (CAC at ¶¶ 18, 42.) The CAC alleges that Malen was aware of PRA's practice to acquire debt without obtaining the account-level documentation that would establish the debts' validity. (*See id.* at ¶ 46.) Thus, Malen was aware of the misleading nature of the affidavits of merit submitted by PRA to support their default judgment motions. The CAC further alleges that PRA prohibited Malen from directly contacting original creditors and debt sellers, so Malen could not itself confirm the legitimacy or accuracy of any debt or amount claimed by PRA. (*Id.*) Nevertheless, the CAC alleges that Malen prepared and filed the default judgment motions supported by the allegedly false, deceptive or misleading affidavits on behalf of PRA. (*See id.* at ¶ 46.)

### D. *The Plaintiff*

On June 6, 2012, Malen initiated a debt-collection lawsuit on behalf of PRA against Toohey in Monroe County Supreme Court. (*Id.* at ¶ 50.) The action sought $976.08, inclusive of interest, for a debt Toohey allegedly incurred to HSBC Bank Nevada, N.A., which was later assigned to PRA. (*Id.*) After Toohey failed to answer, Malen, on behalf of PRA, filed an

application for default judgment on February 22, 2013. (*Id.* at ¶ 51.) The application included an affidavit from PRA employee Yvette M. Stephen who identified herself as a records custodian for PRA. (*Id.* at ¶ 52.) Stephen's affidavit stated, in relevant part:

> [t]his affidavit is based upon my personal knowledge . . . and my review of . . . the business records transferred to [PRA] from **HSBC BANK NEVADA, N.A./ORCHARD BANK**.
>
> . . . .
>
> According to the records transferred to [PRA] from [HSBC] . . . there was due and payable from [Ms.] Toohey[] to [HSBC] the sum of $923.05 . . . with there being no known un-credited payments, counterclaims or offsets against the said debt as of the date of the sale.

(*Id.* (emphasis and alterations in original).)

The application for default judgment was granted by the Monroe County Clerk on March 18, 2013. (*Id.* at ¶ 54.) Inclusive of costs and fees, the default judgment was in the amount of $1,405.04. (*Id.*) On or about May 8, 2013, at Malen's request, the Monroe County Sheriff's Office issued an income execution to Toohey's employer in conjunction with the recently granted default judgment. (*Id.* at ¶ 55.) On November 10, 2014, Malen filed a satisfaction of judgment notice, which reflected that PRA had garnished Toohey's wages in the amount of $1,405.04. (*Id.* at ¶ 56.)

## II. Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]hen the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged," the motion must be denied. *Id.* On the other hand, if the court is left speculating as to whether the defendant is liable for the misconduct alleged, the motion must be granted. *ATSI Commc'ns*, 493 F.3d at 98 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555)).

### III. The Instant Motions

A. *Grounds to Dismiss All Claims*[5]

    a. *Rooker-Feldman Doctrine*

"Under the *Rooker-Feldman* doctrine, lower federal courts lack subject matter jurisdiction over claims that effectively challenge state court judgments." *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002). The doctrine applies when: "(1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (citation and internal quotation marks omitted). However, "[c]laims sounding under the FDCPA, RICO, and state law speak not to the propriety of the state court judgments, but to the fraudulent course of conduct that defendants pursued in obtaining such judgments." *Sykes v. Mel S. Harris and Assocs., LLC* ("*Sykes II*"), 780 F.3d 70, 94-95 (2d Cir. 2015); *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 92 (2d Cir. 2012) ("The alleged litigation misconduct [asserted, *inter alia*, under the FDCPA] was not the product of the state court's denial of sanctions, its judgment . . . , or any other decision rendered, but rather, was 'simply ratified, acquiesced in,

---

[5] PRA also moved to dismiss Toohey's RICO and unjust enrichment claims in their entirety, and FDCPA and GBL § 349 claims for actual damages, arguing that Toohey lacked Article III standing. Toohey's allegation that the default judgment obtained against her was obtained improperly sufficiently alleges an "injury-in-fact" so as to establish constitutional standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Because Toohey, as Defendants concede, has standing to pursue FDCPA and GBL § 349 causes of action, this Court declines to apply standing doctrine to limit the remedies available at this point in the proceedings.

7

or left unpunished by [the state court judgment].'" (quoting *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005)) (second alteration in original)). Because Toohey does not seek to undo the state court judgment through this federal action, but merely seeks damages based on Defendants' alleged independent wrongful conduct, the *Rooker-Feldman* doctrine does not apply, and Defendants' motions on this ground are denied.

    b. Res Judicata

*Res judicata* "bars later litigations if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (citation and internal quotation marks omitted). Thus, "later claims arising out of the same factual grouping as an earlier litigated claim are barred, even if the later claims are based on different legal theories or seek dissimilar or additional relief." *Garcha v. City of Beacon*, 232 F. App'x 74, 75 (2d Cir. 2007).

*Res judicata* does not bar Toohey's claims because the causes of action alleged do not arise out of the same factual grouping as the underlying debt-collection lawsuit. The facts relevant to the instant causes of action (*e.g.*, whether Defendants filed a false, misleading or deceptive affidavit and were engaged in an ongoing scheme to defraud putative debtors) arose independent of the facts relevant to the underlying debt-collection lawsuit (*i.e.*, whether Toohey borrowed money from HSBC and failed to pay it back, and whether HSBC assigned that debt to PRA). *See Gabriele*, 503 F. App'x at 93 (holding that neither *res judicata* nor collateral estoppel barred plaintiff's claims based on defendants' conduct during the course of litigation); *Goddard v. Citibank, NA*, No. 04CV5317 (NGG)(LB), 2006 WL 842925, at *7 (E.D.N.Y. Mar. 27, 2006) (holding that *res judicata* did not bar claims because, *inter alia*, New York law allows a party to

8

maintain a subsequent action if the prior judgment had been procured by fraud, the instant claims had not previously been alleged, and award of damages would not invalidate prior judgment). Accordingly, Defendants' motions to dismiss Toohey's claim on *res judicata* grounds are denied.[6]

B. *FDCPA Claim*

The FDCPA was enacted in 1977 to "eliminate abusive debt collection practices by debt collectors, [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged . . . ." 15 U.S.C. § 1692. To help accomplish these purposes, the FDCPA prohibits debt collectors from, *inter alia*, using any "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.[7] The FDCPA also prohibits debt collectors from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Defendants raise several grounds in support of their motions to dismiss this claim, arguing that: (1) Toohey filed this action after the statute of limitations had expired; (2) FDCPA liability does not attach to representations directed to state courts, as opposed to consumers; and (3) the affidavit of merit was not false or materially misleading. Additionally, PRA moved to dismiss the FDCPA claim based on the *Noerr-Pennington* doctrine, which holds that liability cannot be founded on the filing of a lawsuit unless

---

[6] The non-binding authority cited by Defendants is unpersuasive. In *Marshall v. Grant*, both the underlying state-court action and the instant federal action that the court held was barred by *res judicata* turned on the same operative facts. *See* 521 F. Supp. 2d 240, 246 (stating federal action was barred by *res judicata* because issue of defendant's interest in corporation was already litigated). The same is true with regard to *Gray v. Americredit Fin. Servs., Inc.*, No. 07 Civ. 4039 (SCR), 2009 WL 1787710, at *6 (S.D.N.Y. June 23, 2009) (both underlying action and federal action held to be barred by *res judicata* turned on whether plaintiff had made payments on installment contract). Finally, in *Utreras v. Chicago Title Ins. Co.*, the plaintiff's instant claims were barred by *res judicata* because defendant's alleged fraudulent conduct related to the transaction at issue in the underlying litigation, not the underlying litigation itself. *See* No. 12–CV–04766 (RRM)(LB), 2013 WL 4700564, at *3-4 (E.D.N.Y. Sept. 1, 2013).

[7] Section 1692e contains a non-exhaustive list of practices within the purview of this prohibition, two of which are specifically invoked by Toohey: (1) the prohibition against the use of a false representation of "the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A), and (2) the "use of any false representation or deceptive means to collect or attempt to collect any debt[,]" 15 U.S.C. § 1692e(10).

the suit is objectively baseless and is brought in a subjective bad faith attempt to injure competition through the use of the litigation process, rather than in any hope of success in court. *See Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures, Indus.*, 508 U.S. 49, 60-61 (1993).

   a. *Statute of Limitations*

Defendants first argue that Toohey's FDCPA claim should be dismissed because this action was commenced after the applicable statute of limitations expired. The FDCPA provides for a private right of action against alleged violations. 15 U.S.C. § 1692k. Such actions must be commenced "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d).

The violation allegedly occurred on February 22, 2013 when Defendants filed the affidavit of merit in support of PRA's default judgment motion in the Monroe County Supreme Court. This action was not commenced until October 14, 2015, more than two years after the alleged violation occurred. Thus, Toohey's FDCPA cause of action is untimely unless she can plausibly allege a basis for tolling. *See Coble v. Cohen & Slamowitz, LLP*, 824 F. Supp. 2d 568, 571 (S.D.N.Y. 2011) ("Equitable tolling applies to FDCPA claims in appropriate circumstances.").

A statute of limitations may be equitably tolled if a plaintiff establishes that: "(1) the defendant concealed from him the existence of his cause of action; (2) he remained in ignorance of that cause of action until some length of time within the statutory period before commencement of his action; and (3) his continuing ignorance was not attributable to lack of diligence on his part." *Sykes v. Mel Harris and Assocs., LLC* ("*Sykes I*"), 757 F. Supp. 2d 413, 422 (S.D.N.Y. 2010) (citing *State of N.Y. v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988)). A defendant may be deemed to have concealed the existence of the cause of action when the conduct forming the basis of the action is "inherently self-concealing." *Hendrickson Bros.*, 840 F. 2d at 1083.

The CAC plausibly alleges that equitable tolling applies to Toohey's claim. First, the allegedly false affidavit—purporting that the affiant personally reviewed underlying documentation establishing the existence and amount of Toohey's debt—is inherently self-concealing. Its alleged falsity is information of which only the Defendants could be aware. *Cf. id.* ("The passing off of a sham article as one that is genuine is an inherently self-concealing fraud . . . .").[8]

Second, Toohey plausibly alleges that she remained in ignorance of the basis of her cause of action until the CFPB issued its September 8, 2015 Consent Order revealing that routine representations made by PRA employees in nearly identical affidavits were false. Toohey filed this action approximately five weeks later, well within the one-year limitations period triggered by the Consent Order's issuance.

Third, Toohey's continuing ignorance was not attributable to a lack of diligence on her part. As just discussed, Defendants' allegedly false, deceptive and misleading affidavit of merit was inherently self-concealing. Toohey had no reason to question the truthfulness of the affidavit of merit, and, therefore, no reason to doubt that Defendants lawfully carried their burden of proof to obtain the default judgment.

Malen argues that Toohey could have discovered her FDCPA claim by defending against the collection action. Toohey's decision not to defend against the *collection* action, however, does not lead to the conclusion that she failed to act diligently with respect to discovering this

---

[8] PRA argues that Toohey's cause of action was unconcealed because she "merely alleges that the affidavit . . . did not furnish 'account-level documentation' describing the debt, but the absence of such 'documentation' [was] apparent from the affidavit itself." (Portfolio Recovery Associates, LLC and PRA Group, Inc.'s Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Class Action Complaint ("PRA Br."), (ECF No. 21), at 19 (internal citation omitted).) However, the CAC does not "merely" allege that the failure to attach account-level documentation to the affidavit of merit constituted a violation of the FDCPA; it alleges that the affidavit of merit was false and misleading because it gave the impression that the affiant had reviewed this documentation when she had not. (CAC at ¶¶ 39-40.)

*independent* cause of action. The FDCPA provides that "[t]he failure of a consumer to dispute the validity of a debt . . . may not be construed by any court as an admission of liability by the consumer." 15 U.S.C. § 1692g(c). Thus, according to the express terms of the FDCPA, Defendants had to submit evidence sufficient to establish Toohey's liability regardless of whether Toohey defended against the collection action.[9] Concluding that a consumer must defend against a collection action to be deemed to have acted diligently with respect to discovering a debt collector's fraudulent proffer of proof of liability would, in effect, eviscerate the burden-of-proof protection established in § 1692g(c). Reasonable diligence does not require the expenditure of time and money to defend against a collection action when there is no reason to believe that any valid defense exists.[10] *Cf. Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993) ("There is no duty resting upon a citizen to suspect the honesty of those with whom he transacts business. Laws are made to protect the trusting as well as the suspicious." (quoting *Federal Trade Commission v. Standard Education Society*, 302 U.S. 112, 116 (1937))). Moreover, even if Toohey had appeared in the action, there is no reason to conclude that she would have uncovered the falsity of the affidavit.

Toohey has plausibly alleged that equitable tolling applies to her FDCPA claim. Defendants' motions to dismiss on this ground are denied.

---

[9] Additionally, New York law required Defendants to submit "proof of the facts constituting the claim" to obtain the default judgment. N.Y. C.P.L.R. 3215(f); *Sykes II*, 780 F.3d at 85 ("[F]alse affidavits of merit are necessary to [a] scheme to procure fraudulently obtained default judgments based on what is required in [New York] state court.").

[10] Toohey did not—and does not now contend—that she did not owe the debt sought. Nevertheless, a plaintiff may maintain a cause of action for a violation of the FDCPA even when the plaintiff admittedly owed a legitimate debt to the defendant. *See Sykes II*, 780 F.3d at 83 (quoting with approval the Ninth Circuit for the proposition that "[t]he [FDCPA] is designed to protect consumers . . . regardless of whether a valid debt actually exists"); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2d Cir. 2003) (quoting with approval the Seventh Circuit for the proposition that "the plaintiff who admittedly owes a legitimate debt has standing to sue if the [FDCPA] is violated by an unprincipled debt collector").

### b. *Representations Directed to State Courts as Opposed to Consumers*

Defendants next argue that Toohey's FDCPA claim should be dismissed because FDCPA liability does not attach to representations directed to state courts, as opposed to consumers.

The Second Circuit has not yet addressed whether representations made to courts, rather than consumers, can violate the FDCPA. *Sykes II*, 780 F.3d at 96-9; *id.* at 97 n.2 (citing *Kropelnicki*, 290 F.3d at 128 for proposition that Second Circuit has not ruled on the broader issue of "whether an FDCPA claim may be brought for misrepresentations made to third parties"). Section 1692e's text, particularly when construed in accordance with the purpose of the FDCPA, leads to the conclusion that they can. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." (internal quotation marks omitted)).

Section 1692e states: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Notably, the text does not expressly limit the class of persons to whom the false representation must be made in order to be actionable. In other subsections, however, Congress explicitly singled out conduct specifically directed at consumers when it intended to limit liability for otherwise identical conduct. *See Schendzielos v. Silverman*, 139 F. Supp. 3d 1239, 1244-45 (D. Colo. 2015) (noting that language in 15 U.S.C. §§ 1692b, c(b) expressly limits the conduct that those subsections apply to specific types of persons). This supports an interpretation that § 1692e applies to conduct directed not only to consumers, but to others, as well. *See United States v. Lockhart*, 749 F.3d 148, 154 (2d Cir. 2014), *cert. granted*, 135 S. Ct. 2350 (2015), *and aff'd*, 136 S. Ct. 958 (2016) ("[I]t is well

13

established that statutory phrases should not be construed in isolation; we read statutes as a whole." (internal quotation marks and citations omitted)).

Additionally, "the FDCPA is 'remedial in nature, [and] . . . must be construed in [a] liberal fashion if the underlying Congressional purpose is to be effectuated.'" *Vincent v. The Money Store*, 736 F.3d 88, 98 (2d Cir. 2013) (quoting *N.C. Freed Co. v. Bd. of Governors of Fed. Reserve Sys.*, 473 F.2d 1210, 1214 (2d Cir.1973)); *see Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir. 1989) ("Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices."). The FDCPA's thrust is to "limit[] the suffering and anguish often inflicted by independent debt collectors." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996) (internal quotation marks omitted). There can be no doubt that false, deceptive, or misleading representations made by debt collectors to state courts with the power to enter judgments adverse to consumers have the ability to cause consumers severe harm. *See Sykes I*, 757 F.3d at 427-28 (describing harms to consumers even when they are eventually able to vacate default judgments); (New York State Court System Press Release, *Chief Judge Announces Comprehensive Reforms to Promote Equal Justice for New York Consumers in Debt Cases*, (ECF No. 1-3), at 4 (quoting Chief Judge Lippman as saying that "unwarranted default judgments[] often [have] devastating consequences for the debtor").) Thus, an interpretation categorically excluding such representations from the ambit of § 1692e would fail to accord with the canon that statutes are to be construed consistent with their purpose.

In the instant case, the affidavit of merit submitted by Defendants to the Monroe County Supreme Court allegedly contained a false, deceptive, and misleading representation. The affidavit was submitted so that Defendants could obtain a default judgment that they could then use to garnish Toohey's wages in satisfaction of her debt. Defendants likely would have been unable to

obtain the default judgment without having made the allegedly false, deceptive, or misleading representation. Such conduct falls squarely within the prohibition set forth in the text of § 1692e. Consequently, these allegedly false, deceptive, or misleading representations are actionable under the FDCPA, and Defendants' motions to dismiss on this ground are denied.[11]

### c. *Materially Misleading Nature of Affidavit of Merit*

Defendants also argue that Toohey's FDCPA claims should be dismissed because the challenged statement in the affidavit of merit was not materially misleading. "[C]ommunications and practices that could mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond to or dispute collection" are material, and therefore, violate the FDCPA. *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 94 (2d Cir. 2012). Whether a representation is in fact false, deceptive, or misleading is evaluated from the perspective of the "least sophisticated consumer."[12] *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008) (quoting *Clomon*, 988 F.2d at 1318). When communicating with a consumer regarding a claimed debt, the debt collector "has the obligation[]

---

[11] Defendants rely on the Seventh Circuit's opinion in *O'Rourke v. Palisades Acquisition XVI, LLC*, where two members of the three-judge panel held that the FDCPA does not extend to communications that would confuse or mislead a state court judge. 635 F.3d 938, 944 (7th Cir. 2011). The third member of the panel, however, wrote that the majority's holding "potentially create[d] tension with the text of the Fair Debt Collection Practices Act (FDCPA or "the Act") and the case law of [other] circuits." *Id.* at 944 (Tinder, J., concurring in the result). Recently, the Eleventh Circuit rejected the logic of the majority opinion in *O'Rourke* and held that documents filed in the course of judicial proceedings to collect on a debt are subject to the FDCPA. *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1301-03 & n.8 (11th Cir. 2015). Similarly, the Eighth Circuit explicitly decided not to adopt a "broad ruling that false statements not made directly to a consumer debtor are never actionable under the FDCPA." *Hemmingsen v. Messerli & Kramer, P.A.*, 674 F. 814, 818-19 (8th Cir. 2012).

[12] The parties have not argued, and therefore this Court does not address, whether another standard should apply to representations primarily directed at a state court as opposed to a consumer, and if so, whether that standard has been satisfied. *See O'Rourke*, 635 F.3d at 946-47 (Tinder, J., concurring in the result) (suggesting that a different standard might apply when representation is directed to court rather than consumer).

15

not just to convey the information, but to convey it clearly." *Id.* Accordingly, communications may be deemed to be false, misleading, or "deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate."[13] *See Clomon,* 988 F.2d at 1319.

The affidavit of merit could be interpreted as a representation that Defendants actually possessed and reviewed evidence sufficient to establish Toohey's debt. Nothing about such an interpretation can plausibly be considered "bizarre or idiosyncratic." *Id.* at 1320. In fact, such an interpretation appears to be the intended interpretation, since attesting to have reviewed documents *insufficient* to prove the claimed debt would be senseless.[14] The submission of the affidavit of merit is plausibly misleading and unconscionable conduct in violation of the FDCPA if, as the CAC alleges, Defendants did not possess, and the affiant had not reviewed, evidence sufficient to establish Toohey's debt when they submitted the affidavit falsely attesting to a personal review of reliable documentation. *See* 15 U.S.C. § 1692e (prohibiting "use[s of] false, deceptive, or misleading representation[s] or means in connection with the collection[s] of . . . debt[s]"); 15 U.S.C. § 1692e(2)(A) (prohibiting false representation as to character, amount, or legal status of a debt); 15 U.S.C. § 1692e(10) (prohibiting use of any false representation or deceptive means to collect or attempt to collect any debt); 15 U.S.C. § 1692f (prohibiting use of "unfair or unconscionable means" to collect or attempt to collect on a debt). Indeed, another court within this district has concluded that allegations regarding representations made in an affidavit of merit

---

[13] "In order to prevail, it is not necessary for a plaintiff to show that she herself was confused by the communication she received; it is sufficient for a plaintiff to demonstrate that the least sophisticated consumer would be confused." *Id.* at 91.

[14] This is especially true given that Defendants were required to submit "proof of the facts constituting the claim" to obtain the default judgment. N.Y. C.P.L.R. 3215(f). See also *supra* note 9.

similar to the representations at issue here plausibly pleaded a violation of the FDCPA. *See Sykes I*, 757 F. Supp. 2d at 423-24; *Sykes II*, 780 F.3d at 85 (quoting allegedly false affidavit of merit).[15]

### d. Noerr-Pennington *Doctrine*

The *Noer-Pennington* doctrine "immunizes from liability a party's commencement of a prior court proceeding." *T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*, 312 F.3d 90, 93 (2d Cir. 2002). "The doctrine's 'sham exception,' however, excludes any abuse of process that bars access to the courts, 'such as unethical conduct in the setting of the adjudicatory process or the pursuit of a pattern of baseless, repetitive claims.'" *Sykes I*, 757 F. Supp. 2d at 429 (quoting *Landmarks Holding Corp. v. Bermant*, 664 F.2d 891, 896 (2d Cir. 1981) (additional internal quotation marks and citation omitted)). Additionally, it is doubtful the doctrine applies to FDCPA causes of action. *Hanna & Assocs.*, 114 F. Supp. 3d at 1359-61. Therefore, given Toohey alleges that litigation-related misconduct violated the FDCPA, PRA's motion to dismiss on this ground is also denied.

### C. RICO Claim

To successfully plead a RICO claim, a plaintiff must sufficiently allege that (i) she suffered injury to business or property caused by RICO predicate acts of mail or wire fraud; (ii) the existence of a RICO "enterprise"; (iii) a "pattern of racketeering"; or (iv) any conspiracy to violate RICO. *See* 18 U.S.C. §§ 1962(c)-(d), 1964(c).

---

[15] In its reply brief, PRA raised for the first time two additional arguments: (1) the CAC failed to allege that PRA failed to review documents related to Toohey's specific debt; and (2) pursuing a lawsuit without sufficient evidence fails to state an FDCPA claim (citing *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 172 (2d Cir. 2015)). This Court need not consider arguments raised for the first time on reply. *See Playboy Enters., Inc. v. Dumas*, 960 F. Supp. 710, 720 n. 7 (S.D.N.Y.1997), *aff'd* 159 F.3d 1347 (2d Cir. 1998). In any case, neither argument is persuasive. First, the allegation that PRA's deceptive conduct was widespread leads to the reasonable inference that PRA also lacked sufficient documentation with respect to Toohey's debt. *See CFPB v. Frederick J. Hanna & Assocs., P.C.*, 114 F. Supp. 3d 1342, 1371-74 (N.D. Ga. 2015) (compiling case law explaining why only Rule 8, and not Rule 9(b), applies to FDCPA claims). Second, there is no authority for the proposition that a debt collector may affirmatively and falsely represent that it has evidence to prove a debt-collection claim when it does not. *See Eades*, 799 F.3d at 167 (simply holding debt collector may file a lawsuit and serve summons and complaint without possessing sufficient evidence).

Toohey has failed to carry her pleading burden with respect to this claim. Unlike an FDCPA claim, a RICO claim requires a plaintiff to plead "injury to business or property by reason of" the alleged predicate acts of fraud at issue here. *See* 18 U.S.C. § 1964(c). This requirement means that Plaintiff must "show that a RICO predicate offense 'not only was a "but for" cause of [her] injury, but was the proximate cause as well.'" *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992)). Toohey does not allege that she did not owe the debt for which her wages were garnished. Accordingly, she has failed to allege that RICO predicate acts caused harm to any business or property to which she was entitled. *See Sykes II*, 780 F.3d at 91 (indicating plaintiff cannot actually be an injured party under RICO if a debt was actually owed and default judgment was achieved by means of proper service); *cf. infra* note 17. This pleading failure is fatal to her RICO claim, and it is therefore dismissed.[16]

D. *GBL § 349 Claim*

"A plaintiff under [GBL] section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611, 709 N.Y.S.2d 892, 895 (N.Y. 2000). "In addition, a plaintiff must prove 'actual' injury to recover under the statute, though not necessarily pecuniary harm." *Id.* at 612, 709 N.Y.S.2d at 896.

Toohey has failed to carry her pleading burden with respect to this claim because she has failed to allege harm suffered as a result of Defendants' alleged deceptive acts. For instance, the

---

[16] To the extent Toohey alleges a RICO conspiracy claim, (*see* CAC at ¶¶ 75, 88), that claim is also dismissed because a RICO conspiracy cannot survive the dismissal of its related substantive RICO claim. *See, e.g., First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 163 (2d Cir. 2004) (affirming district court's dismissal of RICO conspiracy claims "because [ ] RICO conspiracy claims are entirely dependent on the [ ] substantive RICO claims," which had been dismissed).

harm caused by the improper freezing of a bank account might qualify as actual injury, even if no pecuniary injury accrued. *See Sykes I*, 757 F. Supp. 2d at 427-28 (presumably relying, at least in part, on fact that plaintiffs' bank accounts had improperly been frozen since the default judgments against them had been vacated). Again, however, Toohey has not alleged that she did not owe the debt for which her wages were garnished, and therefore has not alleged any "actual" injury suffered as a result of Defendants' alleged deceptive acts.[17] Accordingly, Toohey's GBL § 349 claim is dismissed.

### E. Unjust-Enrichment Claim

To survive a motion to dismiss an unjust-enrichment claim, a plaintiff must plead facts supporting the reasonable inference "1) that the defendant benefitted; 2) at plaintiff's expense; and 3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotation marks omitted).

Again, Toohey has not alleged that she did not owe the debt on which Defendants collected; therefore, Defendants could not have benefitted at Toohey's expense merely by utilizing the legal system to collect a debt she actually owed. Under these circumstances, equity and good conscience do not require restitution, since restitution would, in effect, be a windfall for Toohey. Toohey's unjust-enrichment claim is therefore dismissed.

---

[17] The GBL § 349 "actual injury" element requires something more than the "injury-in-fact" required to establish constitutional standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Toohey's allegation that the default judgment was improperly obtained sufficiently alleges an "injury-in-fact" so as to establish standing, but is insufficient to satisfy GBL § 349's "actual injury" element.

19

## IV. Conclusion

Defendants' motions to dismiss Toohey's RICO, GBL § 349, and unjust enrichment claims are GRANTED. Defendants' motions to dismiss Toohey's FDCPA claim are DENIED. The Clerk of Court is directed to close the motions docketed as ECF Nos. 20 and 25.

A case management conference is scheduled for September 22, 2016 at 9:45 AM.

Dated: August 22, 2016
      New York, New York

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
UNITED STATES DISTRICT JUDGE